

IN THE
TENTH COURT OF APPEALS

_____

No. 10-12-00253-CV

_____

IN THE INTEREST OF K.A., AND L.A., CHILDREN

_____

From the 74th District Court
McLennan County, Texas
Trial Court No. 2010-3775-3

_____

MEMORANDUM  OPINION

_____

Angela Allen appeals from a judgment terminating her parental rights to her two children, K.A. and L.A.  Kevin Allen also appeals from the judgment which terminates his parental rights to his child, L.A.  Because we find that the evidence was factually sufficient to support the jury's findings that Angela engaged in conduct or knowingly placed K.A. and L.A. with persons who engaged in conduct which endangered the physical or emotional well-being of K.A. and L.A. and that termination was in the children's best interest, we affirm the judgment of the trial court as to Angela.  *See* TEX. FAM. CODE ANN. § 161.001(1)(E) & (2) (West Supp. 2012).  Further, because we find that the evidence was legally and factually sufficient to support the jury's findings that Kevin engaged in conduct or knowingly placed L.A. with persons who engaged in

conduct which endangered the physical or emotional well-being of L.A. and that termination was in L.A.'s best interest, we affirm the judgment of the trial court as to as Kevin. *See id*.

## BACKGROUND

Angela and Kevin met, moved in together, and married in 2009. Angela already had two children from previous relationships, D.A.[1] and K.A. A child, L.A., was born to the couple in 2010 but Kevin had moved out of the home several months prior to the child's birth. Angela had a history with the Department of Family and Protective Services regarding the condition of her home. In 2003, she received services because her home was filthy and in 2008, her children were voluntarily placed outside the home because of the same condition of the home. The Department contacted Angela in August of 2010 because of a report that her children were running around in dirty, wet pull-ups and that the house was, again, not clean. At the time, Angela was pregnant with L.A. and K.A. was six years old. Kevin had already moved out. In October of 2010, the Department contacted Angela again. L.A. had been born the week before, and the house was in worse condition. K.A. and L.A. were removed from the home.

The jury found that Angela committed the predicate acts listed in subsections (D) and (E) of § 161.001(1) and that Kevin committed the predicate acts listed in subsections

---

[1] D.A. is not a subject of this appeal.

(E) and (O) of § 161.001(1). The jury also found that termination of Angela's and Kevin's parental rights was in the best interest of K.A. and L.A.

## BURDEN OF PROOF

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department is required to establish one predicate act listed under subdivision (1) of the statute and prove that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2012); *In re E.N.C.*, 2012 Tex. LEXIS 866, *15, 56 Tex. Sup. J. 19 (Tex. Oct. 12, 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the children as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West Supp. 2012 & West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

## LEGAL AND FACTUAL SUFFICIENCY

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable

to the finding and judgment and assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id*. We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id*. We must consider, however, undisputed evidence even if it is contrary to the finding. *Id*.

It is necessary to consider all of the evidence, not just that which favors the verdict. *J.P.B.*, 180 S.W.3d at 573. However, we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id*. at 573-74. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id*. at 573.

In a factual sufficiency review, we must give due consideration to evidence that the trier of fact could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must determine whether the evidence is such that the factfinder could reasonably have formed a firm belief or conviction regarding the allegations. *Id.* We must also consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id*. To determine if the evidence is factually sufficient, we give due deference to the trial court's findings and determine whether, on the entire record, the trial court could reasonably form a firm conviction or belief that the parent committed an act that would support termination and that termination of the parent's parental rights would

be in the child's best interest. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

Only one ground of termination is necessary for a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

### ANGELA'S PREDICATE ACT—SECTION 161.001(1)(E)

By her first issue, Angela contends the evidence was factually insufficient to support the jury's finding that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children. Section 161.001(1)(E) of the Texas Family Code requires clear and convincing proof that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E) (West Supp. 2012). This section refers not only to the parent's acts, but also to the parent's omissions or failures to act. *In re J.A.*, 109 S.W.3d 869, 875 (Tex. App.—Dallas 2003, pet. denied). Endanger means "to expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Although endanger means more than a threat of physical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Id*. The Department need not establish the specific danger to the child's well-being as an independent proposition; the danger may be

inferred from parental misconduct. *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 149 S.W.3d 814, 817 (Tex. App.—Eastland 2004, no pet.).

When the Department contacted Angela in August of 2010, the investigator, a new graduate, saw that the house was very cluttered and dirty. There were things stacked on top of things. There were pathways through the stacks of clutter. There was clutter under the coffee tables and end tables. The children's bedroom had toys shoved under the bed and smelled strongly of urine. The bathroom was dirty and the toilet was not working properly. Because the investigator was new, she brought her supervisor with her on her next visit to Angela's house in October of 2010.

At the October visit, K.A. answered the door in a very wet pull-up that sagged to his knees. L.A., who had been born about eight days earlier and was premature, was on his mother's bed. His bassinet was full of diapers, formula, and other items. The house was in worse shape than before. One could hardly walk through the children's room because of the clutter in it. There were dirty underwear and wet pull-ups everywhere and next to school folders and toys. The bedroom smelled worse than before. There was trash on the floor in the living room in addition to the clutter. Prescription medication was left next to toys. There was food left out in the kitchen and dirty plates with food left on them. There was trash in the only bathroom in the house and clumps of hair everywhere. The tub was very dirty and Angela allowed the children to bathe in it. The toilet was very dirty because it either had not been flushed or could not be

flushed. Cleaners were out next to toothpaste and tooth brushes. Grime collected on surfaces.

Angela's assigned caseworker visited the home in February, April, and August of 2011. It remained cluttered but not to the extent as it was in October. The floors were dirty and everything had been shoved against the walls and in the corners. There were still only walkways in the living room. The caseworker's last visit was in December of 2011. At that time, Angela was going through the last of two boxes she was going to get rid of. But her house was still not clean. Her room was a little cleaner than it had been. The bassinet was cleaned out but the clothes rack behind it was cluttered. The children's room was still cluttered. After more than a year without anyone else in her home to take care of or pick up after, Angela still had not been able to clean up her house sufficiently to have her children returned. Her therapist stated Angela had made progress but acknowledged that she would need continued therapy and monitoring to ensure the house would attain an acceptable status and remain that way.

Angela did not fully admit until trial that the condition of her house was unacceptable, although she continued to have difficulty even at trial accepting that the tub had been in terrible condition. Angela had excuses for the condition of her home, such as a back problem, side effects of the HIV medication she was taking, an assault by Kevin in June of 2010, and her difficult pregnancy and recovery. Investigators for the Department opined that the condition of the house was not a recent development.

Representatives of the Department believed the condition of the house was a danger to the children. K.A. had been potty trained in 2008 when the Department had last intervened. Yet by 2010, he was six years old and running around in full, wet pull-ups. He was also developmentally delayed.[2] He was diagnosed with ADHD and Angela believed he was autistic. L.A. was born a few weeks premature. He was about 8 days old when removed from the home. He had been sleeping in Angela's bed because his bassinet was full of other items. The investigator was concerned and cautioned Angela about SIDS. Further, L.A. had also been exposed to the HIV virus because Angela and Kevin were both HIV positive.

Angela argues that we should strictly construe the word "engaged" in subsection (E) to refer to only affirmative acts, rather than omissions, by the parent. Thus, her argument continues, Angela's difficulties in maintaining a clean home is evidence of omissions only, not affirmative acts. Following Angela's argument to its logical conclusion, a parent who does not feed her child does not engage in conduct because the act of failure to feed is an omission rather than an affirmative act. The parent, thus, could not have her parental rights terminated on such an omission. We decline to apply Angela's interpretation of the statute.

---

[2] Angela presented testimony that K.A. did not wear pull-ups, was not developmentally delayed in kindergarten and possibly in first grade, and if he had been wearing pull-ups or developmentally delayed, it could have been due to being removed from his home.

After reviewing the entire record, we believe a factfinder could have reasonably formed a firm conviction or belief that Angela engaged in conduct that endangered the children. The evidence is factually sufficient, and Angela's first issue is overruled.

Because it is only necessary that we determine that the evidence was factually sufficient as to one predicate act under § 161.001(1), we need not address Angela's second issue regarding the sufficiency of the evidence relating to § 161.001(1)(D). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

### KEVIN'S PREDICATE ACT—SECTION 161.001(1)(E)

By his first issue, Kevin contends the evidence is legally and factually insufficient to support the jury's finding that he engaged in conduct or knowingly placed L.A. with persons who engaged in conduct that endangered L.A.

Kevin moved out of the house in June of 2010. The investigator spoke with Kevin in August, after the initial contact with Angela, which was prior to L.A.'s birth. Kevin knew Angela was due to give birth to L.A. in a few months and acknowledged later to the investigator that he knew when L.A. was born. Kevin told the investigator in August that he was hearing from neighbors that since he moved out of the house, Angela had stopped cleaning and the children smelled like urine. Kevin did not express any concern about L.A. during the August conversation. Kevin had the investigator's contact information but never contacted her with any concern about the baby being brought home with Angela.

Kevin testified at trial that up until the time he left, Angela was capable of taking care of the children. But after being confronted with statements he made to his therapist that Angela was not capable of taking care of the children because she slept all day, did not supervise the children properly, and left food, clothes, and trash all over the house, Kevin decided that those problems occurred during the last few days he was at the house. He acknowledged that he knew the Department had been involved with Angela before for a similar situation with the condition of her house.

Kevin told his therapist that Angela did not keep a clean house and she did not take care of the kids. He also told the therapist that Angela could hardly take care of herself, the house was always a mess, he would have to feed the kids when he got home, dishes on the table would not be washed, and he had to teach the children how to bathe themselves. He believed Angela was a hoarder because she had food and clothes all over the place, and food was dried on the table. When he would ask Angela to help clean up, she would respond by crying. Kevin testified at trial that he was just angry with Angela at the time he said those things he told the therapist and implied that the statements were not completely accurate.

As we have held, the evidence is sufficient to support the jury's finding that Angela engaged in conduct that endangered K.A. and L.A. Kevin knew of the condition of the house and expressed no concern about L.A. remaining in those conditions. Using the appropriate standards as set forth above, we find that the

evidence was both legally and factually sufficient for the jury to have determined that Kevin knowingly placed L.A. with a person, that being Angela, who engaged in conduct that endangered L.A.'s physical or emotional well-being.

Again, because it is only necessary that we determine that the evidence was legally and factually sufficient as to one predicate act under § 161.001(1), we need not address Kevin's second issue regarding the sufficiency of the evidence pursuant to § 161.001(1)(O).  *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

## BEST INTEREST

Angela argues the evidence is factually insufficient and Kevin argues the evidence is legally and factually insufficient to support the jury's findings that it was in the children's best interest to terminate their parent-child relationships.  There are several nonexclusive factors that the trier of fact in a termination case may consider in determining the best interest of the child, which include:  (a) the desires of the child, (b) the emotional and physical needs of the child now and in the future, (c) the emotional and physical danger to the child now and in the future, (d) the parental abilities of the individuals seeking custody, (e) the programs available to assist these individuals to promote the best interest of the child, (f) the plans for the child by these individuals or by the agency seeking custody, (g) the stability of the home or proposed placement, (h) the acts or omissions of the parent which may indicate that the existing parent-child

relationship is not a proper one, and (i) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id*. On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id*.

### *Desires of the Child*

Although he did not testify, K.A. made it clear to others that he wanted to return home to his mother. L.A. was too young to express his desires. There was testimony that L.A. is happy in his foster home. His foster family has expressed an interest in adopting L.A., is well-bonded to him, supportive, capable, and prepared to have him as their child, regardless of his potential physical or mental ailments. L.A. did cry at times when his visitation periods with Kevin ended, but Kevin missed 11 visitation periods and had not seen L.A. for several months prior to trial.

### *Emotional and Physical Needs of the Children*

K.A. has been diagnosed with ADHD. Angela thinks he is autistic as well but that condition has not been diagnosed. He has done well in his foster home environment which encourages him to make developmental progress. L.A. has taken

medication for HIV as a precaution but has not tested positive for HIV. He has been sick because of the medication. He will also be tested for autism. Although Kevin, who takes care of disabled children, may be equipped to handle any disabilities L.A. may have in the future, his work schedule with two jobs leaves no room for caring for L.A. His home life is unstable. He has eight other children from previous relationships and cares for none of them. His parents care for one of his children along with their five foster children.

*Emotional and Physical Danger to the Children*

Angela has a history with the Department. Each time it intervenes, her home is in worse condition. After over a year, she had not made much progress cleaning up her home. She needs continued monitoring to make sure the condition of her home improves and does not deteriorate. K.A. was developmentally delayed when he was removed from her home. He had been potty trained during the 2008 intervention but by October of 2010, he was back in pull-ups.

Kevin pled no contest to assaulting Angela while she was pregnant with L.A. He expressed no concern about leaving L.A. in Angela's care, and missed almost half of his visitation periods with L.A.

*Parental Abilities*

Angela thinks she is a great parent but failed to see that her home was a danger to her children. She is intelligent but she is self-focused and not focused on being a

parent. She portrays herself as the victim. Kevin has nine children and takes care of none of them.

*Programs Available*

Angela has participated in the programs available through the Department. She has participated in therapy for a long time on her own. Since the children have been in the Department's care, she changed Department provided therapists twice and ultimately opted to be treated by a therapist of her own choice. Kevin participated in Department programs as well except for therapy. He attended 15 sessions and stopped attending because he did not think he needed to go to any more sessions. His therapist said she could not get him to open up about anything.

*Plans for the Children*

Angela wanted the children to be returned to her. She planned to homeschool them. This caused the Department concern because there would be no one outside the home to monitor the care of the children. The Department was also concerned because Angela did not think K.A. was developmentally delayed when K.A. had to repeat First Grade because he was so far behind. The Department was also concerned that homeschooling would stunt K.A.'s development. Additionally, Angela planned to treat K.A. as autistic when he had been evaluated and determined not to be autistic.

Kevin had no specific plans for L.A. He wanted L.A. to grow up knowing all his siblings. He did not have a specific plan as to who would take care of L.A. while Kevin

was at his job with Caritas. He stated that his mother would take care of L.A. along with six other children in the house. The Department was concerned that Kevin would shirk his responsibility for L.A. and simply let his mother take care of L.A. However, since Kevin had recently moved out of his parents' home, he did not specify how that would affect his care of L.A.

*Stability of the Home*

Angela's home is stable in the sense that she has not moved for a long period of time, but the cleanliness of her home has been a continual problem. She has had many relationships as well. Angela has not had steady, full-time employment and is receiving disability benefits. She has had seasonal employment with Jackson-Hewitt for at least two years and testified that she has been offered a full-time job there. She did not know how that job would affect her disability benefits.

Since the time his relationship with Angela ended, Kevin talked of moving to Dallas with another woman and having another child with her. He no longer has that plan. He lived with his parents but talked of moving to a house next door that needed renovating. He has not finished the renovations. At the time of the trial, he recently moved in with an elderly military veteran and did not inform the Department of this move. Kevin works in the home health care field and has recently started a second job with Caritas.

*Acts or Omissions of the Parent*

Angela could not provide a clean environment for her children and made little progress in making the home ready for their return. Kevin knew of Angela's inability to keep the house clean and care for the children but expressed no concern about leaving L.A. with Angela. Kevin also neglected to keep many of his scheduled visits with L.A.

*Excuses for Acts or Omissions*

Angela offered many excuses for why she was not able to properly care for her children or offer them a safe living environment. However, she had no excuse for why it took so long to clean her home with no one else living in the home and working part-time. Kevin's excuse for leaving L.A. with Angela was that he thought she had filed a temporary restraining order against him. However, by the time L.A. was born, he assumed the restraining order had expired. He also blamed his job with Caritas as the reason he could not make many of his scheduled visits with L.A. However, most of the visitation periods missed occurred before he began working for Caritas.

Witnesses for the Department testified that in their belief, it would be in the best interest of the children to have Angela's and Kevin's parental rights terminated. After reviewing the entire record, and using the appropriate standards, we find the evidence legally and factually sufficient to support the jury's findings that termination of the

parent-child relationships was in the best interest of the children. Angela's and Kevin's third issues are overruled.

## SEPARATE TRIALS

Angela brings a fourth issue contending that the trial court abused its discretion in not ordering a separate trial for Angela. Specifically, she contends the jury was prejudiced against her by evidence offered against Kevin. *See* TEX. R. CIV. P. 174(b). Angela never requested a separate trial. Accordingly, her complaint is not preserved. TEX. R. APP. P. 33.1. Angela's fourth issue is overruled.

## CONCLUSION

Having overruled each issue on appeal, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed November 15, 2012
[CV06]