**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00295-CV**
_____

**IN THE INTEREST OF A.M. AND B.T.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 17-05-05542-CV**

**MEMORANDUM OPINION**

Appellant N.B. appeals from an order terminating her parental rights to her minor children, A.M. and B.T. In issues one through three, N.B. contends that the evidence is legally and factually insufficient to support the trial court's decision to terminate her parent-child relationship with A.M. and B.T. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O) (West Supp. 2018). In issue four, N.B. argues that the evidence is legally and factually insufficient to support the trial court's best-interest finding. *See id.* § 161.001(b)(2) (West Supp. 2018). We affirm the trial court's judgment.

1

BACKGROUND

In May 2017, the Department of Family and Protective Services ("the Department") filed a petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship (SAPCR). In the SAPCR, the Department sought to terminate N.B.'s parental rights, alleging that N.B. had committed seven predicate statutory grounds that justified terminating her parental relationship with A.M. and B.T. In the affidavit in support of removal, Alison Adams, a representative of the Department, averred that in April 2017, the Department received a referral involving the neglectful supervision of A.M. and B.T. According to Adams, the Department received a report that N.B. was using methamphetamines while caring for the children. Further, law enforcement officers had found fifty-four grams of methamphetamines on a male friend of N.B.'s when they arrested him for assault with a deadly weapon.

Adams further averred that in May 2017, the Department received a second referral regarding the neglectful supervision of A.M., which indicated that a man, who was under the influence and had methamphetamines in his possession, took A.M. to the emergency room alleging that she had been sexually assaulted. According to Adams's affidavit, A.M. presented at the hospital with a diaper rash and several bug bites, was agitated, and had not been fed all day. Adams claimed

that when N.B. arrived at the hospital, she appeared to be very skinny, not well kept, and under the influence of drugs. N.B. refused to take a drug test. Based on the possibility that A.M. had been sexually assaulted, along with N.B.'s history of using drugs, refusing drug tests, fleeing from the Department, and leaving the children in the care of people who use drugs, Adams maintained that the Department needed to take emergency custody of the children.

The trial court named the Department as the temporary managing conservator of the children and scheduled a hearing on May 16, 2017. N.B. was ordered by the court to comply with the Department's service plan and to provide an appropriate home, maintain employment, submit to a psychological or psychiatric examination, attend counseling sessions, attend parenting classes and parent meetings, submit to a drug and alcohol dependency assessment, and submit to random drug testing. The record shows that N.B. failed to demonstrate adequate and appropriate compliance with her service plan. The record further shows that on May 10, 2018, N.B. tested positive for amphetamines, and on May 24, 2018, N.B. failed to submit to a random drug test.

The case proceeded to trial. Andrea Eford, a caseworker with the Department, testified that she was assigned to N.B.'s case in May 2017, which was shortly after the trial court named the Department as the children's temporary managing

conservator. Eford explained that the Department became involved with the children after the incident at the hospital. Eford also explained that the Department was concerned about N.B.'s drug use.

Eford testified that N.B. had failed to complete her service plan by not providing a certificate for a parent collaboration group or any pay stubs showing proof of employment. Eford explained that N.B. did not complete the recommendation in her psychological evaluation, which required that she attend at least eight individual counseling sessions. Eford testified that N.B. also failed to participate in intensive outpatient group therapy, as required by her drug and alcohol assessment. Eford further testified that the Department had requested that N.B. submit to a drug test at least twice per month, but N.B. only tested one time in May 2018, when she tested positive for methamphetamine. According to Eford, N.B. had not provided any financial support for the children in the past year.

Eford testified that the children have been together in their current placement with prospective adoptive parents since June 2017, and the children are doing well. Eford requested that the trial court appoint the Department as the permanent managing conservator of the children and explained that the Department's goal was adoption. Eford testified that it was in the children's best interest for N.B.'s parental rights to be terminated because N.B. failed to do what was necessary to obtain the

4

return of the children. Eford believed that N.B. understood her service plan requirements, including periodic drug testing. Eford explained that she was concerned that N.B. had refused to submit to drug testing because N.B. had recently admitted to using drugs and N.B. might continue to use drugs. According to Eford, due to N.B.'s recent drug use and because N.B. has failed to show that she is capable of providing a safe, stable, and drug-free environment for the children, termination was in the children's best interest.

Charlotte Drumm, the CASA volunteer assigned to the case, testified that the children were doing very well in their placement and that it was in the children's best interest for N.B.'s parental rights to be terminated. Drumm explained that she had repeatedly discussed with N.B. the importance of working her service plan and submitting to drug testing, and Drumm was very concerned that N.B. had failed to do so. Drumm testified that she did not believe that N.B. had any impediments that prevented her from completing the service plan. According to Drumm, it was in the best interest of the children to stay in their current placement with the foster family.

Christi Camarata, the children's foster mother, testified that B.T. and A.M. had been in her care for approximately one year, and at the time of trial, A.M. was eighteen months old and B.T. was three years old. Camarata testified that A.M. initially had a "pretty bad[]" diaper rash and it took a couple of months for it to heal.

Camarata explained that A.M. was prone to diaper rashes due to food allergies. Camarata further testified that she and her husband were prepared to provide the children with a permanent home. According to Camarata, the children were doing very well and developing normally.

N.B. testified that she was living with her grandparents when the Department removed A.M. and B.T. N.B. testified that J.T., a friend of N.B.'s sister, kidnapped A.M. and took her to the emergency room and reported that she had crabs. According to N.B., when the incident occurred, A.M. was seven months old, A.M. was sleeping in a room with N.B.'s mother, N.B. was sleeping in a separate room with B.T., and N.B. had been treating A.M. for diaper rash. N.B. explained that she and the children were spending the night at a friend's house when J.T. took A.M. while N.B. was sleeping, and N.B. did not give J.T. permission to take A.M. N.B. explained that she received a call from the hospital and was informed that J.T. had taken A.M. and that he had drugs in his possession, and N.B. filed a police report. N.B. testified that she did not associate with J.T. and had only known him for a few months. N.B. was concerned that J.T. had done something inappropriate with A.M. because he was using drugs and has mental issues. Due to her concerns, N.B. requested that the hospital conduct a SANE examination. N.B. denied being on drugs when she arrived at the hospital to get A.M.

N.B. testified that she was ordered to complete a service plan and that she had certificates for some of the required classes. N.B. explained that she attended a parenting class and the parent collaboration group, completed a substance abuse assessment, and started her drug and alcohol abuse classes. She admitted that she had failed to appear for random drug testing. N.B. testified that she did not have a reason or an excuse for why she failed to submit to the drug tests, but she claimed that she did not understand that she was required to do so. N.B. explained that her unplanned pregnancy had slowed her progress of completing her service plan. N.B. testified that she did not complete her drug and alcohol abuse treatment due to delays and scheduling conflicts. According to N.B., she took two psychological evaluations, but she did not receive a diagnosis, any recommendations, or medication for mental health issues. N.B. testified that she completed a psychiatric exam and a psychosocial evaluation, and within the past month she had started therapy and a program for chemical dependency. N.B. explained that she was not aware that her service plan was court ordered until the beginning of 2018, and she did not fully understand the Department's concerns.

Regarding her use of drugs, N.B. testified that she has "experienced[]" methamphetamine in the past three years. N.B. testified that the Department had investigated four allegations concerning her use of methamphetamine, but she

denied using methamphetamine while caring for her children or when she was pregnant. When questioned about her positive drug test in May 2018, N.B. explained that she gave birth on April 23 and used methamphetamine in May. N.B. also explained that she had eliminated people from her life, including J.T., so she could get her children back.

N.B. explained that she was still living in her maternal grandparents' home and was working as a home health provider. According to N.B., she attended all the scheduled visitations with her children and provided them with financial support by buying them items they would need when they returned home. N.B. testified that she was able to provide support and a home for her children, and she requested that the trial court give her an extension and not terminate her rights.

Yvonne McWhorter, N.B.'s maternal grandmother, testified that N.B. is not currently living with her, but had lived with her "off and on[]"about a year ago. Yvonne testified that the children did not have rooms in her home, she did not know where N.B. currently lived, and she was unsure if N.B. was still working. Yvonne explained that she had no concerns about N.B.'s parenting ability. Yvonne further testified that she has never known N.B. to use illegal substances, and she was surprised that N.B. tested positive for methamphetamine. According to Yvonne, it is

not in the best interest of the children for N.B.'s rights to be terminated because the children love N.B., and N.B. has always been good to her children.

Monica McWhorter, N.B.'s aunt and Yvonne's daughter, testified that she saw N.B. and the children about once per month at Yvonne's house. Monica testified that she thought N.B. still lived with Yvonne. According to Monica, N.B. worked in home health, but Monica did not know where N.B. was employed. Monica testified that she did not have any concerns about N.B.'s parenting abilities. Monica explained that she was surprised that N.B. had a positive drug test because she thought N.B. was doing better. Monica also explained that she never thought N.B. was on drugs when she saw N.B. with the children. Although Monica testified that she was willing to have the children placed with her, she admitted that she had not provided the necessary information to be considered for placement, because she had "backed off" when she thought the children were going to be returned to N.B. Monica further testified that she had not seen the children since they had been placed with their foster family.

The trial court found that clear and convincing evidence supported three predicate statutory grounds for terminating N.B.'s parental rights and that termination of N.B.'s parental rights is in the best interest of A.M. and B.T. *See* Tex.

Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (O), (2). The trial court rendered a final judgment that terminated N.B.'s parental rights to A.M. and B.T. N.B. appealed.

ANALYSIS

In issues three and four, N.B. argues that the evidence is legally and factually insufficient to establish that she failed to comply with the provisions of a court order that specifically established the actions necessary for N.B. to obtain the return of her children, and that terminating her parental rights would be in the best interest of A.M. and B.T. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O), (2). N.B. argues that there was no evidence showing that she failed to follow the provisions of a court order or that her children were in danger when the Department took emergency possession of them. ( The Department maintains that there is clear and convincing evidence to support termination of N.B.'s parental rights. ( Because issues three and four are dispositive of the appeal, we address them first. *See* Tex. R. App. P. 47.1.

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been

10

incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*.

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id*. We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id*. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *see In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001; *see also In the Interest of J.L.*, 163 S.W.3d at 84. We will affirm a judgment only if any one of the alleged

11

grounds is supported by legally and factually sufficient evidence, and the best interest finding is also supported by legally and factually sufficient evidence. *See In the Interest of A.V. and J.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Section 161.001(1)(O) allows for termination of parental rights if the trial court finds by clear and convincing evidence that the parent has failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of a child who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under chapter 262. Tex. Fam. Code Ann. § 161.001(1)(O).

The Department may take possession of a child without a court order if on information furnished by another that has been corroborated by personal knowledge of facts and all of which are taken together would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child; or the child is in the possession of a parent or person who is currently using a controlled substance as defined by Chapter 481 of the Texas Health and Safety Code, and the use constitutes an immediate danger to the physical health or safety of the child. *Id.* § 262.104(a)(2), (5) (West Supp. 2018). If the Department petitions for possession of a child without prior notice and a hearing, the petition

12

must include an affidavit sworn by a person with personal knowledge stating sufficient facts to satisfy a person of ordinary prudence and caution that, among other things, "there is an immediate danger to the physical health or safety of the child or the child has been a victim of neglect or sexual abuse[.]" *Id.* § 262.101(1) (West Supp. 2018). Under chapter 262's removal standards, "'abuse or neglect of the child' necessarily includes the risks or threats of the environment in which the child is placed." *In the Interest of E.C.R*, 402 S.W.3d 239, 248 (Tex. 2013). This also includes "the harm suffered or the danger faced by other children under the parent's care." *Id.* If a parent has neglected or otherwise endangered her child's physical health or safety, such that initial and continued removal of the child are appropriate, the child has been removed under chapter 262 for the abuse or neglect of the child. *Id.*; *see* Tex. Fam. Code Ann. §§ 161.001(1)(O), 262.104(a)(2), (5).

Here, the Department's evidence in support of removal included Adams's affidavit showing that the Department received a referral regarding the neglectful supervision of A.M. and B.T. by N.B., who allegedly used methamphetamine while caring for her children. In her affidavit, Adams swore that it was reported to her that law enforcement had responded to a home and found fifty-four grams of methamphetamines on N.B.'s male friend, who was arrested. According to Adams's affidavit, three days after the first referral, the Department received a second referral

regarding the neglectful supervision of six-month old A.M. by N.B. and N.B.'s friend, J.T., and Adams stated that it was reported that J.T. was high on methamphetamines when he took A.M. to the hospital. Adams further averred that when she met N.B. at the hospital, N.B. appeared to be under the influence of some substance and refused to submit to a drug screen. N.B. also gave conflicting answers concerning the whereabouts of B.T. Adams's affidavit concluded that removal was necessary because the children are at vulnerable ages and unable to protect themselves and N.B. is unable to appreciate the danger in which she places her children.

The evidence and the trial court's findings establish that A.M. and B.T. were removed from N.B. under chapter 262 for abuse or neglect, and it is undisputed that the children were in the Department's custody for more than nine months after removal. *See In the Interest of E.C.R.*, 402 S.W.3d 239, 248-49 (Tex. 2013). The evidence further shows that N.B. failed to demonstrate adequate and appropriate compliance with her service plan. *See In the Interest of J.F.C.*, 96 S.W.3d at 277. Eford testified that N.B. had failed to provide an appropriate home and proof of her employment, attend the required number of counseling sessions as recommended by her psychological evaluation, participate in intensive outpatient group therapy as required by her drug and alcohol assessment, and submit to random drug testing.

14

The record shows that N.B. partially complied with some provisions of her service plan and offered excuses for not complying with others, including claiming that she did not understand that her plan was court ordered; however, Eford testified that she believed N.B. understood the services she needed to complete in order to obtain the return of her children. Drumm also testified that she had repeatedly discussed with N.B. the importance of working her service plan and submitting to drug testing, and Drumm explained that she did not believe that N.B. had any impediments that prevented her from completing her service plan.

Viewing the evidence in the light most favorable to the trial court's finding under subsection 161.001(b)(1)(O), we conclude that the trial court could reasonably conclude that N.B. failed to comply with the provisions of a court order that specifically established the actions necessary for N.B. to obtain the return of her children who had been in temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal for the abuse or neglect. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O); *In the Interest of J.F.C.*, 96 S.W.3d at 266. In light of all the evidence presented, the trial court could reasonably have formed a firm belief or conviction that N.B. failed to comply with the provisions of a court order that specifically established the actions necessary for N.B.

to obtain the return of her children. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O); *In the Interest of J.F.C.*, 96 S.W.3d at 266.

Regarding the best interest finding, we consider a non-exhaustive list of factors: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code. Ann. § 263.307(b) (West Supp. 2018). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the children's best interest. *See In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *See In the Interest of N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We conclude that the reasons described above supporting the termination of N.B.'s parental rights under subsection (O) also

support the trial court's best interest finding. *See In the Interest of E.C.R.*, 402 S.W.3d at 249; *In the Interest of C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In regard to the *Holley* factors, N.B. maintains that there was no evidence showing that the emergency removal was in the children's best interest, that N.B. was unable to provide for her children's needs at the time of trial or in the future, or that not having a relationship with her newborn child would not negatively affect the children. With respect to the best interest finding, the trial court heard testimony that N.B. had repeatedly refused to submit to drug testing over the past year, tested positive the same month her case proceeded to trial and only one month after giving birth, and refused to submit to a random drug test after her positive result. The trial court heard N.B. admit that she used methamphetamine the month after she gave birth to her new child. The trial court also heard testimony that N.B. failed to participate in intensive outpatient group therapy, and that the Department was concerned about N.B.'s continued drug use.

The trial court heard conflicting testimony regarding whether N.B. was able to provide a home and support for the children. Although N.B. testified that she was living in Yvonne's home, Yvonne testified that N.B. was not currently living with her and the children did not have rooms in her home. N.B. failed to provide proof of employment, and N.B.'s family did not know where N.B. was working. Although

17

N.B. testified that she could support the children, the trial court heard testimony that N.B. had not provided any financial support for the children in the past year.

The trial court heard testimony that the children had been doing well in their current placement for the past year, and the children's foster parents were willing to adopt them. The trial court heard testimony that A.M. had food allergies and that it was in the best interest of the children to stay in their current placement. The trial court also considered Eford's testimony that termination was in the children's best interest because N.B. had failed to demonstrate that she could provide a safe, stable, and drug-free environment for the children. Drumm also testified that it was in the children's best interest that N.B.'s parental rights be terminated. Although Monica testified that she was willing to take the children, the trial court heard testimony that she did not follow up with the Department, and Monica had not seen the children since they had been placed in foster care.

The evidence at trial showed that N.B. had been neglectful in her supervision of the children, and neglect can be just as dangerous to a child as direct physical abuse. *See In re M.C.*, 917 S.W.2d 268, 270 (Tex. 1996). The trial court heard testimony that while N.B. did not know J.T. well, N.B. did know that J.T. had mental issues. The trial court considered N.B.'s testimony that she allowed J.T. to be in contact with her children despite claiming that she "would never give a man like that

consent to take my kid." Although N.B. claimed that her mother was supervising A.M. when J.T. took A.M., N.B.'s mother did not testify at trial to corroborate N.B.'s account of how the incident had occurred. Additionally, N.B. testified that she did not have a reason or an excuse for why she failed to submit to the drug tests.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tex. Fam. Code Ann. § 263.307(a) (West Supp. 2018). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of N.B.'s parental rights was in the best interest of A.M. and B.T. *See id.* §§ 161.001(b)(2), 263.307(a); *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72. We conclude that the Department established, by clear and convincing evidence, that N.B. committed the predicate act enumerated in section 161.001(b)(1)(O) and that termination of N.B.'s parental rights is in the best interest of A.M. and B.T. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O), (2); *In the Interest of A.V.*, 113 S.W.3d at 362. We overrule issues three and four. Having determined that the evidence is legally and factually sufficient to support termination under subsection (O), we need not address the sufficiency of the evidence as to subsections (D) and (E). *See In the Interest of A.V.*, 113 S.W.3d at 362. We overrule

issues one and two. Having overruled all of N.B.'s issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on October 22, 2018
Opinion Delivered January 10, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.