917 S.W.2d 268 (1996)
In re M.C., D.C., and C.W., Children, Petitioners.
No. 95-0871.
Supreme Court of Texas.
March 7, 1996.
*269 Craig Carter, Austin, for Petitioners.
Isaac M. Castro and Jeffrey S. Davis, Hamlin, for Respondent.
PER CURIAM.
Following a jury trial, the trial court rendered judgment in this case terminating L.C.'s parental rights to her three children, M.C., D.C., and C.W. The court of appeals held that the evidence was "not sufficient" to support the judgment because "[t]here was no evidence that L.C. `endangered' her children." ___ S.W.2d ___, ___[, 1996 WL 102361]. Finding that the Texas Department of Protective and Regulatory Services (TDPRS) presented legally sufficient evidence to support the trial court's judgment, we reverse the judgment of the court of appeals and remand this case to that court so that it may address L.C.'s remaining points of error. See Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 462 (Tex.1992).
The Legislature has authorized the termination of parental rights if the parent has:
(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or
(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.
TEX.FAM.CODE § 15.02(1)(D) & (E) (current version at TEX.FAM.CODE § 161.001). "Endanger" means "to expose to loss or injury; to jeopardize." Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Although "`endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." Id.
On at least two occasions, L.C. left the children alone in potentially dangerous *270 situations. In June 1991, a police officer found the two older children, ages two and four, wandering on a highway at night. When he brought the children home, he found C.W., an infant, alone. L.C. arrived five or ten minutes later and, according to the officer, she appeared unconcerned that the children had been alone. Another witness testified that one day while she was visiting her mother, L.C. left her children alone in a car while it was running and the children drove the car into a neighbor's house.
There was also evidence that L.C. jeopardized her children's health by allowing them to live in extraordinarily unsanitary conditions. Caseworkers and counselors who visited L.C.'s home testified that it was infested with roaches, that the children ate food off the floor and out of the garbage, and that the floor and furniture were littered with food, dirty clothes, garbage, and feces. The children often wore soiled diapers and clothes, and sometimes had dried food, feces, and mucus on their skin and clothes. Francis Hardy, a foster parent for the children, testified that when the children arrived at her house, they were unclean and had a bad odor. D.C. had dead cockroaches matted in her hair. When Mrs. Hardy cleaned C.W.'s bottles, she found dead roaches inside.
Cynthia Asbury, a Child Protective Services Specialist, testified that L.C. was not only indifferent to the unsanitary conditions of her house and her children, but also unresponsive to the children's health problems. During one summer, L.C. moved her family from her mother's home to a rented house, apparently before utility services were connected. Ms. Asbury found the children suffering from severe diarrhea and vomiting, without plumbing or drinking water. Ms. Asbury also testified that the children were often sick with diarrhea and vomiting, but that L.C. rarely took them to the doctor. Ms. Asbury sometimes arranged medical appointments for the children when they were ill, but, usually, L.C. did not bring them to their appointments.
Based on the evidence in the record, we conclude that the Texas Department of Protective and Regulatory Services presented more than a scintilla of evidence that L.C. endangered her children's physical well-being. Although there is no evidence that L.C. inflicted direct physical abuse on her children, there is evidence that she neglected their physical needs, and neglect can be just as dangerous to the well-being of a child as direct physical abuse.[1]
Accordingly, we grant the Department's application for writ of error and, without hearing oral argument, reverse the judgment of the court of appeals and remand this case to that court so that it may address L.C.'s remaining points of error. See TEX.R.APP.P. 170.
NOTES
[1] In its brief, TDPRS notes that in Fiscal Year 1994, 102 children died in Texas from either abuse or neglect. Fifty-five of these deaths were the result of neglect.