In The 



Court of Appeals



Ninth District of Texas at Beaumont


________________



NO. 09-08-00506-CV


 _____________________



IN THE INTEREST OF G.K., A.J.S. AND C.S.C.






On Appeal from the 88th District Court


Hardin County, Texas


Trial Cause No. 47639






MEMORANDUM OPINION



 K.C. and L.C. appeal the trial court's order terminating their parental rights. See Tex.
Fam. Code Ann. § 263.405 (Vernon 2008). (1) They challenge the legal and factual
sufficiency of the evidence supporting the judgment. K.C. was represented by counsel. L.C.
asserts the trial court erred by failing to appoint trial counsel. We affirm the trial court's
order.


The Trial Court Proceedings

 The Department of Family and Protective Services filed a petition for termination of
parental rights. The petition sought termination of K.C.'s rights as to her three children
named in the suit, and termination of L.C.'s parental rights as to C.S.C., the only child named
in the suit that is his biological child. The trial court signed an order terminating parental
rights. K.C. filed a notice of appeal. L.C. then filed a pro se notice of appeal. 

 The termination order states that the court found by clear and convincing evidence that
the termination of both K.C.'s and L.C.'s parental rights is in the children's best interests,
and that K.C. and L.C. (1) knowingly placed or knowingly allowed the children to remain
in surroundings or conditions which endangered their physical or emotional well-being and
(2) engaged in conduct or knowingly placed the children with persons who engaged in
conduct which endangered the children's physical or emotional well-being. See Tex. Fam.
Code Ann. § 161.001(1)(D),(E), (2) (Vernon 2008).

 L.C.'s notice of appeal stated, "I was accused of things that wasn't so, and also I did
everything the CPS wanted me to do. I also request a court appointed lawyer to help me with
this case." We remanded the case to the trial court for a hearing to determine L.C.'s recent
claim of indigence. The appeal was abated and the trial court held a hearing pursuant to
Texas Family Code Section 263.405. See Tex. Fam. Code Ann. § 263.405. The trial court 
appointed counsel for L.C., but found his appeal would be frivolous under section 13.003 of
the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §
13.003 (Vernon 2002); Tex. Fam. Code Ann. § 263.405(d)(3). The appeal was reinstated
upon the filing of a supplemental clerk's record.

Section 263.405(i)


 The Department contends we are precluded from considering L.C.'s and K.C.'s issues
on appeal because they were not included in a proper statement of points. Section 263.405(b)
of the Family Code requires a party who intends to appeal a final order terminating parental
rights to file "a statement of the point or points on which the party intends to appeal" with
the trial court "[n]ot later than the 15th day after the date a final order is signed[.]" Tex.
Fam. Code Ann. § 263.405(b). Section 263.405(i) states:

 The appellate court may not consider any issue that was not
specifically presented to the trial court in a timely filed
statement of the points on which the party intends to appeal or
in a statement combined with a motion for new trial. For
purposes of this subsection, a claim that a judicial decision is
contrary to the evidence or that the evidence is factually or
legally insufficient is not sufficiently specific to preserve an
issue for appeal. 


Id. § 263.405(i). 

 The Texas Supreme Court recently held that section 263.405(i) is unconstitutional as
applied to the extent it prevents a court from considering a claim of ineffective assistance of
counsel, and also "when it precludes a parent from raising a meritorious complaint about the
insufficiency of the evidence supporting the termination order." In re J.O.A., 283 S.W.3d
336, 339 (Tex. 2009).

Termination of Parental Rights


 To prove endangerment under section 161.001(D), the Department had to prove the
parent knowingly placed or allowed her children to remain in conditions or surroundings that
endangered their physical or emotional well-being. See Tex. Fam. Code Ann. §
161.001(1)(D). Under subsection (E), the relevant inquiry would be whether evidence exists
that the endangerment of the children's physical well-being was the direct result of that
parent's conduct, including acts, omissions, or failures to act. See id. § 161.001(1)(E); In re
J.T.G., 121 S.W.3d 117, 125 (Tex. App.--Fort Worth 2003, no pet.). "Endanger" means
more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family
environment. In re M.C., 917 S.W.2d 268, 269 (Tex. 1996) (citing Tex. Dep't of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987)). To "endanger" includes exposure to loss
or injury; thus surroundings can endanger the well-being of a child without the child
suffering actual physical injury. In re L.C., 145 S.W.3d 790, 796 (Tex. App.--Texarkana
2004, no pet.). Endangering conduct is not limited to actions directed towards the child. In
re J.O.A., 283 S.W.3d at 345. Evidence of illegal drug use or alcohol abuse will support an
affirmative finding that the parent has engaged in conduct which endangers the child. In re
S.N., 272 S.W.3d 45, 52-53 (Tex. App.--Waco 2008, no pet.); In re R.W., 129 S.W.3d 732,
739 (Tex. App.--Fort Worth 2004, pet. denied). 

 To determine the best interest of the child, a court applies a non-exhaustive list of
considerations. See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). The
considerations include the desires of the child, the emotional and physical needs of the child
now and in the future, the emotional and physical danger to the child now and in the future,
the parental abilities of the individuals involved, the programs available to promote the best
interests of the child, the plans for the child, the stability of the home, the acts or omissions
of the parent which may indicate that the existing parent-child relationship is not proper, and
any excuse for the acts or omissions of the parent. Id. 

The Record


 The Department received allegations as to physical abuse of the children by L.C.,
neglectful supervision of all three children by L.C. and K.C., and emotional abuse of G.K.
by L.C. An investigator for the Department interviewed the children. The investigator
observed bruising on five-year-old G.K. G.K. told the investigator that L.C. whipped him
with a switch and that L.C. had been physically violent towards K.C. G.K. demonstrated
how L.C. would pick up C.S.C., who was four months old at the time, and slap her. G.K.
also stated that L.C. used marijuana in the house while the children were present, and G.K.
was able to demonstrate how L.C. would roll up a marijuana cigarette. A therapist that
evaluated G.K. reported that G.K. would have severe emotional problems if he had any
continued contact with L.C. or was subjected to comments about L.C. The investigator
interviewed school officials and learned that K.C. had visited the school and asked for help
because of the domestic violence.

 After the interviews the investigator established a safety plan for K.C. She was to
take the children to live in another county with her mother and brother. The safety plan
allowed K.C. to return home, but L.C. was prohibited from being around the children. K.C.
returned home and L.C. went to live with his father. K.C. was financially dependent on L.C.
and subsequently decided she wanted to get back together with him. The investigator
transferred the case to family-based safety services.

 K.C. testified at the termination hearing that L.C. whipped G.K. with a switch and
paddle and, in her opinion, did it too hard. She also admitted that L.C. spanked C.S.C. when
she was four months old. On one occasion, two of the youngest children witnessed K.C. and
L.C. get into a physical altercation for which K.C. and L.C. went to jail. K.C. filed a
protective order against L.C., and the Department then obtained temporary custody of the
children.

 At one point when K.C. and L.C. had reconciled, K.C. called CPS and reported that
L.C. had marijuana and approximately $4,000 in drug money in the house. As a result, L.C.
was charged with possession of marijuana. K.C. took the cash and separated from L.C. as
required by CPS, in order to get visitation with her children. Around this time, she picked
up her children from the foster parents at a convenience store and when the foster parents
left, L.C., who had been in the store, got in the vehicle with K.C. and the children.

 L.C. participated in drug rehabilitation, marriage counseling, parenting classes, and
a psychological evaluation, and submitted to drug screens in the beginning, as required by
the Department's service plan. Although L.C. had passed prior drug screens, during the year
prior to the termination hearing the Department requested several times for L.C. to take a
drug test. He refused. 

 At the termination hearing, K.C. acknowledged that she had been in continual contact
with L.C. even though she knew he was a danger. K.C. stated she has no plans to be in a
relationship with L.C. She knew he was selling marijuana as recently as nine months prior
to the termination hearing. She testified she went gambling in Louisiana with only her
mother during the two weeks before the hearing, and denied that L.C. accompanied them. 
Her mother testified L.C. went with them. K.C. still depends on L.C. financially. 

Issues


 K.C. did not file a motion for new trial or a separate statement of points on appeal. 
In her notice of appeal, filed fifteen days after the trial court signed the termination order, she
stated that the trial court erred in allowing the Department to withdraw its mediation
agreement and that "the evidence did not prove by clear and convincing evidence that [her
parental] rights should be terminated." K.C. has abandoned her argument regarding the
Department's withdrawal of its mediation agreement. In her only issue, K.C. challenges the
sufficiency of the evidence supporting the order terminating her parental rights.

 In his first two issues, L.C. states the trial court erred in terminating his parental rights
to C.S.C. He asserts the evidence was insufficient to support the finding that he had
knowingly placed or knowingly allowed C.S.C. to remain in conditions or surroundings
which endangered her emotional or physical well-being, and the finding that he engaged in
conduct or knowingly placed C.S.C. with persons who engaged in conduct which endangered
her physical or emotional well-being. L.C.'s third issue challenges the trial court's finding
that terminating his parental rights as to C.S.C. was in the best interest of the child.

 The Texas Supreme Court indicated in In re J.O.A. that the trial court's order should
alert parents to section 263.405's requirements so that parents do not inadvertently waive
their appellate rights under the Family Code. See In re JOA, 283 S.W.3d at 344. Here, the
trial court included a paragraph entitled "WARNING: APPEAL OF FINAL ORDER" in the
termination order, and the paragraph recited the language of both sections 263.405(b) and
263.405(i). Neither appellant filed a motion for new trial or a separate statement of points
on appeal. Reviewing the record for insufficiency of the evidence supporting the termination
order, we conclude no meritorious complaint about the sufficiency of the evidence to support
the termination order could be presented. See In re J.O.A., 283 S.W.3d at 339. K.C.'s issue
is overruled. L.C.'s first three issues are overruled. 


Trial Counsel


 L.C. also argues the trial court erred in not providing him with appointed counsel at
trial. He did not request the trial court appoint counsel to represent him at trial. He did not
file an affidavit of indigence in the trial court. See Tex. Fam. Code Ann. § 107.013(a)(1),(d)
(Vernon 2008). The record indicates he had retained counsel at the beginning of the case. 
Apparently L.C.'s counsel was not present at mediation or trial. L.C. did not complain at any
time before he filed his appeal about the absence of his retained counsel. 

 Generally, when a party can afford an attorney and no law mandates appointment of
one, a party may appear to defend his rights in a civil action "either in person or by an
attorney of the court." Tex. R. Civ. P. 7. Here, the record establishes that L.C. had retained
counsel before trial; L.C. did not file an affidavit of indigency and did not request
appointment of an attorney in the trial court; and he testified he was receiving income
regularly while also financially supporting K.C. Though circumstances may have changed,
the trial court did not find that he was indigent at any time before he filed his appeal. L.C.'s
request for appointment of counsel for the appeal and his filing of an affidavit of indigency
did not occur until he filed his notice of appeal. See Tex. Fam.Code Ann. § 263.405(b),(i);
see also Tex. R. App. P. 33.1. He has not shown entitlement to appointment of counsel
before he filed the affidavit of indigency. L.C.'s fourth issue is overruled.

 The judgment of the trial court is affirmed.


 AFFIRMED.

 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on July 15, 2009

Delivered August 27, 2009

 

Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Unless otherwise noted, we cite to the current version of the statute because the
changes in the statute that have occurred since the Department filed suit against L.C. and
K.C. do not impact their issues.