

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00224-CV
_____

IN THE INTEREST OF A.M.A., A CHILD

On Appeal from the 84th District Court
Ochiltree County, Texas
Trial Court No. 13,560, Honorable William D. Smith, Presiding

September 27, 2016

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

G.A., the father of A.M.A., appeals from the judgment of the trial court terminating his parental rights to A.M.A. A.M.A.'s mother, T.A., signed an affidavit of relinquishment of her parental rights and is not a party to this appeal. We will affirm the judgment entered by the trial court.

### Factual and Procedural Background

The Department of Family and Protective Services (Department) first became involved with A.M.A. in December of 2012. As a result of this initial involvement with A.M.A., the Department instituted a Family Service Plan with G.A. on December 8. The

Department filed its petition for protection of a child, for conservatorship, and for termination on December 12. After a full adversary hearing on December 12, the trial court entered temporary orders naming the Department as temporary managing conservator of A.M.A.

Subsequently, on May 8, 2014, the trial court entered a final order in suit affecting the parent-child relationship. Pursuant to that order, the Department was named A.M.A.'s permanent managing conservator. At the time of the final order appointing the Department permanent managing conservator, G.A. was appointed possessory conservator with certain restrictions on his visitation with A.M.A.

On April 9, 2015, the Department filed a petition to modify prior orders and for termination in the suit affecting the parent-child relationship. A bench trial was held on the Department's petition on March 21, 2016. At the conclusion of the bench trial, the trial court entered an order terminating G.A.'s parental rights pursuant to Texas Family Code section 161.001(b)(1)(D), (E), (N), and (O), and finding that termination was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), and (O) (West Supp. 2016).[1]

At the trial, the Department's caseworker, Jarrett Stone, testified to the facts leading to the decision to seek termination of G.A.'s parental rights. Stone testified that, at the original final hearing on May 8, 2014, the trial court ordered G.A. to complete specific services. These services were incorporated into a Family Plan of Service that was provided to G.A. and signed by him.

---

[1] Further reference to the Texas Family Code will be by reference to "section ____" or "§ ____."

As pertinent to this discussion, G.A. was ordered to:

(1) return to Texas within sixty days of the final hearing and begin individual counseling sessions with a counselor agreed to by both parties;
(2) demonstrate and show evidence of employment and housing;
(3) submit to random drug testing;
(4) participate in NA/AA meetings on a regular basis, and provide verification of attendance;
(5) maintain contact with the Department.

In addition to those listed services, G.A. was also required to attend parenting classes and undergo OSAR[2] assessment to address substance abuse issues.

Stone testified that he had reviewed the requirements with G.A. However, G.A. had not begun, much less completed, any of the services required. Stone further testified that he had attempted to contact G.A. regarding the services through the mail at the address G.A. had previously provided. In addition, Stone testified that he attempted to contact G.A. through G.A.'s father in Montana and by trying to phone G.A. at the various phone numbers he had for G.A. in his file. Throughout the entire proceeding, Stone was only able to contact G.A. twice and, on both occasions, the contact was at a local jail where G.A. was incarcerated.

In connection with the incarceration of G.A., Stone testified that, from the May 2014 hearing date to late December 2015, G.A. had been incarcerated a substantial period of the time. When cross-examined about G.A.'s incarceration and whether such incarceration would prevent G.A. from completing the services, Stone's testimony was that this was G.A.'s decision because he committed the crimes that led to his incarceration.

_____

[2] Outreach, Screening, Assessment and Referral Center.

The record further reflects that, since the May 2014 hearing, G.A. has had no contact with A.M.A. When testifying about G.A.'s lack of contact with A.M.A., Stone stated that A.M.A.'s therapist recommended no contact between G.A. and A.M.A. However, the Department did agree that G.A. could have some contact under very controlled situations. After receiving this information, G.A. never contacted the Department to initiate any visitation.

Testifying further about his contact with G.A., Stone stated that he had received one letter from G.A. and "maybe" phone calls on two separate occasions. In neither phone conversation did G.A. ever ask about A.M.A.

As stated above, Stone testified that G.A. had been incarcerated much of the time during the pendency of the case. The Department offered a number of judgments reflecting G.A.'s various criminal convictions. Of importance to our decisions are those convictions occurring since the permanent conservatorship was awarded to the Department in May of 2014. G.A. pleaded guilty to the felony offense of possession of a controlled substance on May 14, 2015. He was sentenced to a term of one year deferred adjudication. That matter had a pending application to adjudicate at the time of the final hearing. Additionally, G.A. had numerous charges pending at the time of the final hearing. These included possession of methamphetamine, burglary of a vehicle, and possession of a dangerous drug. G.A. pleaded guilty to the possession of methamphetamine on December 2, 2015, and received a six year sentence but was placed on community supervision for five years. Stone opined that G.A.'s continued involvement with controlled substances was endangering conduct that would affect his parental rights with A.M.A.

A.M.A.'s foster mother also testified at the termination hearing. A.M.A. had been living with the foster family for almost three years on the date of the final hearing. The foster family includes A.M.A. in all of the family activities and plan to adopt A.M.A. In addition to A.M.A., the foster parents have two biological children, an adopted child who is three years old, and a foster daughter who is seventeen years old.

The foster mother testified that A.M.A. is bonded to the family and refers to the husband and wife as "dad" and "mom." A.M.A. is in the first grade and appears to be doing well in school.

Regarding G.A., the foster mother testified that A.M.A. never refers to him and is very direct in asking that G.A.'s name not be mentioned in the family. A.M.A. has verbalized a desire to be adopted by the foster parents.

At the conclusion of the evidence, the trial court terminated G.A.'s parental rights and found that termination was in the best interest of the child. G.A. now appeals presenting four issues that contend that the evidence was factually and legally insufficient to support the trial court's judgment. G.A. does not contest the trial court's finding that the best interest of the child is served by termination of his parental rights. We will affirm.

Standard of Review

The natural right existing between parents and their children is of constitutional dimensions. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); see *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right

5

as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes both (1) one or more acts or omissions enumerated under section 161.001(b)(1), and (2) that termination of the parent-child relationship is in the best interest of the child. § 161.001(b). Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *See In re C.H.*, 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001(b). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's judgment of termination if legally and factually sufficient evidence supports any one of the grounds found in the judgment, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. *See id.*

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see* § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be

6

established."  § 101.007 (West 2014).  This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role.  *In re C.H.,* 89 S.W.3d at 26.

When reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established.  *See In re J.F.C.,* 96 S.W.3d at 265-66.  "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."  *Id.* at 266.  In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.  *Id.*

When reviewing the factual sufficiency of the evidence supporting a judgment of termination, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations.  *In re C.H.,* 89 S.W.3d at 25.  In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding.  *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."  *Id.*

7

Analysis

We begin our analysis by noting that the proof of one predicate act by clear and convincing evidence is sufficient to support a trial court's decision to terminate the parental rights of a parent. *See In re A.V.*, 113 S.W.3d at 362. The trial court found by clear and convincing evidence that G.A. had engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. § 161.001(b)(1)(E). For purpose of a subsection (E) analysis, endanger means to expose to loss or injury; to jeopardize. *In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). Further, such conduct does not necessarily have to be directed at the child nor does the child have to suffer actual injury. *See In re M.J.M.L.,* 31 S.W.3d 347, 350 (Tex. App.—San Antonio 2000, pet. denied). Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of that child. *See In re R.W.,* 129 S.W.3d 732, 738-39 (Tex. App.—Fort Worth 2004, pet. denied). When viewing the endangering conduct allegation, a reviewing court may consider the parent's failure to complete the service plan. *See In re R.F.,* 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.).

The record before the Court demonstrates a continued pattern of drug abuse by G.A. The pattern of drug abuse demonstrated by G.A. pre-dates the original final hearing where the Department was appointed permanent managing conservator. Further, since the petition to modify and terminate was filed, G.A. has continued to use and abuse controlled substances. Since the beginning of the termination proceeding, G.A. has pleaded guilty to possession of a controlled substance on two separate occasions. G.A. has spent a majority of his time since the filing of the modification and

8

termination proceeding in jail or in another state. We have previously held that intentional criminal activity which exposed the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child. *In re K.V.,* No. 07-15-00424-CV, 2016 Tex.App. LEXIS 3985, at *6 (Tex. App.—Amarillo Apr. 14, 2016, no pet.) (mem. op.) (citing *In re A.W.T.,* 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) (per curiam)). In addition to his continued use of controlled substances, G.A. has availed himself of none of the services offered by the Department which might have helped him overcome his substance abuse issues.

Additionally, the record reflects that, since the petition to modify and terminate was filed, G.A. has had virtually no contact with A.M.A. Not only has G.A. had no contact with the child, when Stone visited with G.A. in person, G.A. did not inquire about the child. Such infrequent visitation, in this case virtually no visitation, can also serve to endanger a child's well-being. *See In re R.M.,* No. 07-12-00412-CV, 2012 Tex. App. LEXIS 10239, at *13 (Tex. App.—Amarillo Dec. 11, 2012, no pet.) (mem. op.).

When viewed in a neutral light and taking into consideration conflicting evidence, the record supports the proposition that the trial court could have reasonably formed a conviction or belief about the truth of the Department's allegations regarding G.A.'s endangerment of A.M.A. *See In re C.H.,* 89 S.W.3d at 25. Accordingly, the evidence is factually sufficient to support the trial court's judgment.

We therefore overrule appellant's first issue that the evidence was not factually sufficient to support the trial court's judgment that G.A. had engaged in endangering

9

conduct under section 161.001(b)(1)(E).  We note, again, that G.A. has not contested the trial court's finding that termination was in the best interest of the child.

Conclusion

Having overruled G.A.'s first issue, we affirm the judgment of termination.


Mackey K. Hancock<br>Justice