

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00871-CV

**IN THE INTEREST OF C.M.**, M.M., and V.M., Children

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-01429
Honorable Karen H. Pozza, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: May 8, 2019

AFFIRMED

Father[1] appeals an order terminating the parent–child relationship between him and C.M.,

M.M., and V.M. He argues the evidence is insufficient to support findings required for the order.

We affirm the trial court's order.

### PROCEDURAL BACKGROUND

The Department filed suit for conservatorship of C.M. and M.M. (twins who were born in

2015), and V.M. (born in 2016), and termination of Father's parental rights. The children were

removed from Father's care based on concerns of physical abuse by their mother and Father's

girlfriend, G.G. The children were thereafter placed with their maternal aunt, Maria.

---

[1] To protect the identity of the minor children, we refer to the appellant and children by aliases. *See* TEX. FAM. CODE
§ 109.002(d); TEX. R. APP. P. 9.8(b)(2).

The case proceeded to a bench trial, at which several witnesses testified. The case was tried together with a separate case involving another one of Father's daughters, C.C.[2] One of the Department's primary concerns at trial was Father's ability and willingness to protect the children from G.G.'s conduct. After trial, the trial court rendered an order terminating Father's parental rights under section 161.001 of the Texas Family Code.[3] Father timely appealed.

### STANDARD OF REVIEW & STATUTORY REQUIREMENTS

To terminate parental rights under section 161.001 of the Texas Family Code, the Department must prove by clear and convincing evidence: (1) one of the grounds in subsection 161.001(b)(1); and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found, by clear and convincing evidence, four grounds in subsection 161.001(b)(1) and that termination of Father's parental rights is in the children's best interest.

Father argues the evidence is legally and factually insufficient to support these findings. We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standard of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). Under this standard, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witness[es]." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

### GROUNDS FOR TERMINATION

In his first four issues, Father challenges the trial court's four findings of grounds for termination. The trial court found Father failed to complete court-ordered provisions of his family

---

[2] Father has appealed the order in the other suit, and the appeal has been docketed as cause number 04-18-00870-CV.
[3] The final order also terminated the parental rights of G.G., who has not appealed.

service plan, failed to support the children, knowingly endangered the children based on their conditions or surroundings, and knowingly endangered the children by engaging in conduct or placing Father with persons who engaged in conduct endangering the children's wellbeing. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (F), (O). A finding of only one ground is necessary. *See In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.).

We begin by considering the trial court's finding regarding endangerment by conduct, the Department's primary concern at trial. Section 161.001(b)(1)(E) provides a ground for a termination when a parent has "knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* TEX. FAM. CODE § 161.001(b)(1)(E). "Endanger" means to expose a child to loss or injury or jeopardize a child's emotional or physical well-being. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). "[I]t is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.*

At trial, Father described his family's living situation as a "violence environment." He testified he had learned G.G. had bruised C.C.'s lip by hitting her in the face, and he called the police two days after he learned about the incident. Father also testified he was aware that, before this incident, G.G. had purposefully burned C.C.'s hand with an iron or curling iron, and he would leave the children in G.G.'s care while he was away at work. He testified C.C., C.M., M.M., and V.M. lived in the home when G.G. abused C.C., and the children were possibly in danger of being physically abused by G.G. during that time, which would "definitely" harm the other children emotionally. Father testified he had known that G.G. was abusing C.C. for two years before the incident when G.G. hit C.C.

The Department's investigator, Tiffany Garza, testified C.C. had made an outcry of physical abuse. Garza testified C.C.'s injuries included an injury to her upper lip, an abrasion on

her neck, and scab marks on her stomach and the side of her thigh. She further testified C.C. also reported G.G. had also poked her with a knife and choked her. Garza stated she spoke with G.G., and G.G. admitted to what C.C. had described. According to Garza, G.G.'s other daughter F. reported G.G. had hit C.C., burned C.C.'s eyes, and tried to hold C.C. underwater. F. also reported G.G. had once hit F. on the back of the head, and that she too was afraid of G.G. Moreover, Father testified F. had suffered from witnessing G.G.'s abuse of C.C.

Although most of the evidence at trial concerned G.G.'s abuse of C.C., Father's testimony supports a reasonable inference that the "violence environment" in the children's home would jeopardize C.M., M.M., and V.M.'s emotional or physical well-being. And, a propensity for violence may be considered evidence of endangerment, even if the endangering acts were not directed at or did not cause actual injury to the child. *See id.*

Although Father argues he called and cooperated with the police, and took other steps to change G.G.'s conduct once he realized C.C. was in danger, he does not dispute that, during the two years before the incident for which he called the police, the evidence showed he placed the children in the care of G.G. knowing G.G. had physically abused the children's older sister, C.C. We hold the evidence is legally and factually sufficient to support the trial court's finding of knowing endangerment under section 161.001(b)(1)(E). Because a finding of only one ground is necessary, we do not address Father's issues challenging the trial court's findings as to other grounds for termination. *See D.J.H.*, 381 S.W.3d at 611–12.

### BEST INTEREST

In determining the best interest of a child, courts consider the non-exhaustive *Holley* factors. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the

individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

C.M., M.M., and V.M. were all under the age of three at trial. When a child is unable to express his desires, the factfinder may consider whether the child has bonded with her current caregivers, is well cared for by them, and has spent minimal time with the biological parent. *In re M.C.L.*, No. 04-17-00408-CV, 2017 WL 5759376, at *3 (Tex. App.—San Antonio Nov. 29, 2017, no pet.) (mem. op.). C.M., M.M., and V.M. were placed with their maternal aunt, Maria, and Department caseworker Diana Torres testified, as did Father, that C.M., M.M., and V.M. are bonded with Maria.

The evidence also showed Father would not be protective of the children from G.G.'s future conduct. Father testified he had ended his relationship and all communication with G.G., and the evidence showed G.G. had fled to Mexico to avoid criminal prosecution for injuring C.C. approximately two months before the trial in this case. However, Father's aunt testified Father told her he was planning to take the children to Mexico, start an apartment business, and live with G.G. She explained Father purchased new tires for his truck because "he was going to take [the children]

straight to Mexico." Father testified he did not plan to move to Mexico and that he bought new tires because he often drove to Corpus Christi for work.

Torres testified multiple family members expressed concern to her that Father would take the children to Mexico. She also testified Father had not demonstrated he would protect the children because he minimized G.G.'s physical abuse of C.C. Torres stated that during one of Father's visits with C.C., Father had FaceTimed[4] G.G. and tried to have C.C. talk to G.G. Father testified he simply gave C.C. his phone and C.C. saw a picture of G.G. Torres further testified that three months before trial, Father visited C.C. at school and brought G.G. with him. Although G.G. stayed in the car, Torres had informed Father that G.G. could not attend the visit.

Father also testified there was a Facebook profile with his name and pictures of him and G.G. as recent as the month before trial. The profile stated he and G.G. were in a relationship. Father denied that the profile was his and stated G.G. had his password. The evidence was disputed as to Father's plans for the children, and we defer to the trial court's resolution of these disputed factual issues because the trial court is the sole judge of the weight and credibility of the evidence. *See F.M.*, 2017 WL 393610, at *4.

Furthermore, the evidence showed there was domestic violence between Father and G.G. Department investigator Garza testified F. reported there was domestic violence between Father and G.G. She further testified Father told the police there was "ongoing fighting in the house with [G.G.]." *See In re O.N.H.*, 401 S.W.3d 681, 685 (Tex. App.—San Antonio 2013, no pet.) (considering evidence of domestic violence as relevant to a child's best interest).

Some evidence showed Father had completed the required programs on his family service plan, had a source of income from subcontracting work, and had a safe and stable home. However,

---

[4] Torres testified FaceTime is "a feature on the phone where . . . you can see the person on video as you're talking to them."

Torres testified at least one of Father's service providers expressed concern that he "was concerned about checking off the boxes and having his services completed, but not really learning from them or being honest with the providers." She also testified Father's income after expenses was insufficient to provide for childcare for all of the children. Moreover, Father's landlord testified he was seeking a way to evict Father because he was often late in paying the rent.

We hold sufficient evidence supports the trial court's finding that termination of Father's parental rights is in the children's best interest. *See Holley*, 544 S.W.2d at 371–72.

## CONCLUSION

Having concluded sufficient evidence supports findings necessary to support the trial court's order, we affirm the trial court's order terminating the parent–child relationship between Father and C.M., M.M., and V.M.

Luz Elena D. Chapa, Justice