

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00103-CV

**IN THE INTEREST OF A.-N.L.C.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-01805
Honorable Antonia Arteaga, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: June 26, 2019

AFFIRMED

A.C. appeals an order terminating his parental rights to his daughter, A.-N., who was born in May 2016. He argues the trial court's findings of grounds for termination are not supported by sufficient evidence. We affirm the order of termination.

### BACKGROUND

A.-N. was removed from A.C. on August 10, 2017, due to concerns of neglect. The affidavit in support of removal alleged A.C. had neglected A.-N.'s medical needs by not seeking proper medical treatment. The Department of Family and Protective Services filed an original petition seeking managing conservatorship of A.-N. and termination of her parents' rights. A.-N.'s mother voluntarily relinquished her rights.

The trial court ordered A.C. to comply with the requirements set out in the service plan prepared for him by the Department. Compliance with the service plan's requirements was necessary to obtain the return of A.-N. The service plan specifically required A.C. to engage in and complete a drug program, among other services.

The case proceeded to a three-day bench trial. The trial court heard testimony from numerous witnesses, and admitted A.C.'s family service plan into evidence. The family service plan states A.C. brought A.-N. to the hospital on July 24, 2017, because she had a fever. A.-N. was brought to the hospital again the following day. When A.C. was notified A.-N. might have a urinary tract infection and need an abdominal x-ray:

> [A.C.] left the emergency room with [A.-N.] and never returned. Attempts were made to contact [A.C.] because [A.-N.] may have needed antibiotics, but he did not answer his phone or return calls. [A.-N.] is reported to be 14 months old, weighing a little over 17lbs. She does not walk. It was reported she has not been to a primary care physician since birth and doesn't receive immunizations because [A.C.] does not believe in them.[1]

A.C. testified A.-N. had a 108-degree fever, but hospital staff told him "it was the flu," and discharged A.-N. from the hospital.

There was conflicting evidence about what happened after A.C. left the hospital on July 24, 2017. A.C. first testified he returned the following day because A.-N. had a 105-degree fever and "there was something else wrong with her." He stated that when hospital staff criticized him for not having A.-N. vaccinated, he "grabbed [A.-N.] and walked out" because he was upset. A.C. testified he realized A.-N. "was in serious danger that day" and knew "that [such a fever] was dangerous for a baby." A.C. stated that when A.-N. had the 105-degree fever he knew "she had a bacteria" because he "didn't wash [her bottle] right and she got bacteria." A.C. testified he then

---

[1] At trial, there was disputed evidence about A.C.'s reasons for declining immunization for A.-N. However, A.C. does not challenge the trial court's finding that its order is not based on A.C. having "declined immunization for the child for reasons of conscience, including a religious belief." *See* TEX. FAM. CODE § 161.001(c)(5)

went "to his aunt's" because she is a nurse, and she told A.C. to keep A.-N. hydrated and give her Motrin to keep her fever down.

However, A.C. also testified he had "called" his aunt for her advice, and stated the second time he took A.-N. to the hospital was a few days after her first hospital visit. He stated that after he left the hospital, he left A.-N. with his brother for two weeks because he "was on the run" and "didn't want to have [his] daughter in the street with [him]." A.C. testified he had an outstanding warrant for his arrest. He also testified that after he left the hospital with A.-N., he waited approximately six days to call his brother, who came and took A.-N. and gave her "home remedies." A.C. stated that, at some point, his brother took A.-N. to their mother's home. A.C. further testified that on the day of A.-N.'s removal, August 10, 2017, she had a fever.

A.C. testified he gave A.-N. Motrin, but he also testified he did not "believe in" giving A.-N. "a manmade drug." A.C. acknowledged Motrin is a manmade drug. A.C. also admitted he had used methamphetamines, which he understood were also manmade drugs. He clarified he opposed only manmade vaccinations. A.C. also stated he went to the hospital "thinking they would give her some antibiotic 'cause I knew something was wrong with her." He further stated he "should have just took her to another hospital." A special investigator with the Department testified A.C. "said he did not want his child to have any medicine or shots. And if we did, he would sue the department."

The Department located A.-N. on August 10, 2017, at A.C.'s mother's home, where A.C.'s brother and his girlfriend lived in a trailer on the property. Law enforcement officials located A.C. on his mother's property that day and arrested him. A.C.'s mother testified A.C. took A.-N. from the hospital, did not get her treatment, and endangered her by failing to do so.

A.C.'s brother testified A.C. brought A.-N. to him approximately one week before August 10, 2017. However, he also testified A.-N. was in his care for the two weeks after she first went to

the hospital. A.C.'s brother testified he "just put a cold rag on [A.-N.]. And her fever went down." According to the Department's special investigator, when A.-N. was removed, she was "warm to the touch," but he "couldn't determine what her actual temperature was."

A.-N. was placed with a foster mother, who testified she met A.-N. at the hospital on August 10, 2017. She explained A.-N. came to live with her on August 11, 2017. The foster mother, who was also a nurse, described A.-N.'s medical issues:

> So she gets a fever from an upper respiratory infection. She has terrible allergies. She gets sick at least once a month. So -- and she's also followed by ear, nose, and throat doctor. [sic] So her allergies cause fluid buildup in her ears. She can never drain that fluid. So for the past three months, she's had chronic fluid in her ears. And now they want to do surgery on her ears.

She elaborated that allergy testing found A.-N. is allergic to dust mites, which are year-round in San Antonio. She also stated A.-N. was given antibiotics at the hospital when she came to live with her on August 11, 2017, and A.-N. thereafter started to have seizures, for which A.-N. received medication. A.C. testified A.-N. did not have allergies or seizures when she was with him.

A.C. testified he complied with some, but not all, of the court-ordered requirements of his service plan. He stated he had not completed drug treatment, which his family service plan specifically required him to do.

After trial, the trial court signed a final order terminating A.C.'s parental rights. The trial court found, by clear and convincing evidence, termination is in A.-N.'s best interest and three grounds for termination: endangerment by conduct, constructive abandonment, and failure to comply with court-ordered requirements of his family service plan. A.C. timely appealed.

## DISCUSSION

To terminate parental rights under section 161.001 of the Texas Family Code, the Department must prove by clear and convincing evidence: (1) one of the grounds in subsection

161.001(b)(1); and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). A.C. does not dispute termination of his parental rights is in A.-N.'s best interest. He argues only that the evidence is legally and factually insufficient to support the findings of grounds for terminating.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standard of review established by the Supreme Court of Texas in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). Under this standard, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witness[es]." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

We begin by considering the trial court's finding under Subsection (E) of knowing endangerment by conduct, which was the Department's primary concern at trial. *See In re N.G.*, No. 18-0508, 2019 WL 2147263, at *1 & *4 n.1 (Tex. May 17, 2019) (holding we must always review a legal sufficiency challenge to a finding under Subsections (D) or (E), and only one such finding is necessary to satisfy the requirement of a ground for termination).

Section 161.001(b)(1), Subsection (E), provides a termination ground when a parent has "knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* TEX. FAM. CODE § 161.001(b)(1)(E). "Endanger" means to expose a child to loss or injury or jeopardize a child's emotional or physical well-being. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). "The failure to provide appropriate medical care for a child may constitute endangering conduct under Subsection (E)." *In re J.D.G.*, 570 S.W.3d 839, 852 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "This is true even if the parent did not cause the need for the medical treatment." *Id.* Moreover, "evidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a

course of conduct that endangered the well-being of the child." *In re S.R.*, 452 S.W.3d 351, 360–61 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

A.C. testified he knew from A.-N.'s high fever that she "was in serious danger." Although A.C. initially took A.-N. to the hospital for medical treatment, he left the hospital without getting treatment for A.-N., despite knowing she needed medical treatment, because he was upset with hospital staff. A.C. acknowledged he should have taken A.-N. to another hospital. There was conflicting evidence as to whether A.C. sought any treatment or gave A.-N. any medication after leaving the hospital, and we defer to the factfinder's determinations as to "the weight and credibility of the evidence." *See F.M.*, 2017 WL 393610, at *4. The evidence permitted a reasonable factfinder to conclude A.C. did not seek medical treatment for A.-N. when she "was in serious danger." The evidence further showed A.C. was "on the run," and he had violated conditions of his probation, an outstanding warrant for his arrest, a history of drug use, and multiple prior convictions for assault family violence.

A.-N. had a fever on July 25, 2017, and the evidence shows it was apparent to hospital staff and A.C. that she needed antibiotics at that time. When A.-N. was found and removed on August 10, 2017, she had a fever and needed antibiotics. This evidence reasonably supports an inference that A.-N.'s medical needs were not met after A.C. left the hospital with her. Such a delay in seeking medical treatment can constitute endangering conduct for purposes of Subsection (E). *See In re J.I.T.*, No. 01-17-00988-CV, 2018 WL 3131158, at *15 (Tex. App.—Houston [1st Dist.] June 27, 2018, pet. denied) (mem. op.) (stating failure to seeking medical treatment and withholding antibiotics for four days after burn-related infection developed was evidence of endangering conduct). We hold legally and factually sufficient evidence supports the trial court's finding under Subsection (E) that A.C. knowingly engaged in conduct that endangered A.-N.'s physical well-being. *See id.*; *see also* TEX. FAM. CODE 161.001(b)(1)(E).

## CONCLUSION

Because A.C. does not challenge the trial court's best-interest finding, a finding of only one ground for termination is sufficient to support the order of termination. Because sufficient evidence supports the trial court's finding of a ground for termination under Subsection (E), we need not address A.C.'s challenges to the trial court's findings of other grounds for termination. We affirm the trial court's order terminating A.C.'s parental rights.

Luz Elena D. Chapa, Justice