

**IN THE**
**TENTH COURT OF APPEALS**

No. 10-22-00095-CV

**IN THE INTEREST OF A.T. AND N.T., CHILDREN**

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 20-000013-CV-272**

**MEMORANDUM OPINION**

Ashley and Joshua appeal from a judgment that terminated their parental rights

to their children, A.T. and N.T. *See* TEX. FAM. CODE ANN. §161.001. Ashley's appointed

counsel has filed a brief pursuant to *Anders v. California* asserting that Ashley's appeal

presents no issues of arguable merit. *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396,

18 L. Ed. 2d 493 (1967). Joshua complains that the evidence was legally and factually

insufficient for the trial court to have found that he committed the predicate act in Section

161.001(b)(1)(E) (endangering conduct) or that termination was in the best interest of the

children. We agree with counsel for Ashley's assertion that her appeal is frivolous and

affirm the judgment of the trial court terminating Ashley's parental rights. We find that

the evidence is insufficient for the trial court to have found that Joshua committed the predicate act in Section 161.001(b)(1)(E), which was the only ground upon which the termination was granted. We reverse the judgment of termination as to Joshua and remand this proceeding to the trial court for further proceedings.

## ASHLEY'S APPEAL

The procedures set forth in *Anders* are applicable to appeals of orders terminating parental rights. *In re E.L.Y.*, 69 S.W.3d 838, 841 (Tex. App.—Waco 2002, order). Counsel for Ashley advised her that counsel had filed the brief pursuant to *Anders* and that Ashley had the right to review the record and file a pro se response on her own behalf. Ashley did not file a response with this Court.

Counsel included a recitation of the facts in the *Anders* brief and asserted that counsel reviewed the record for any potentially meritorious issues and determined there is no non-frivolous issue to raise in this appeal. Counsel's brief discusses the sufficiency of the evidence relating to all four grounds on which the termination was granted, including Family Code Section 161.001(b)(1)(D) and (E), as well as the best interest of the children. Counsel's brief evidences a professional evaluation of the record, and we conclude that counsel performed the duties required of appointed counsel. *See Anders*, 386 U.S. at 744; *see also In re Schulman*, 252 S.W.3d 403, 406-408 (Tex. Crim. App. 2008).

Upon the filing of the *Anders* brief, as the reviewing appellate court, it is our duty to independently examine the record to decide whether counsel is correct in determining

that an appeal is frivolous. *See In the Interest of G.P.*, 503 S.W.3d 531, 536 (Tex. App.—Waco 2016, pet. denied). Arguments are frivolous when they "cannot conceivably persuade the court." *McCoy v. Court of Appeals*, 486 U.S. 429, 436, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988).

Having carefully reviewed the entire record and the *Anders* brief, we agree with counsel that the appeal is frivolous. *See In re D.D.*, 279 S.W.3d 849, 850 (Tex. App.—Dallas 2009, pet. denied). Accordingly, we affirm the trial court's order of termination as to Ashley.

### JOSHUA'S APPEAL

Joshua complains that the evidence was legally and factually insufficient for the trial court to have found that he "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangered the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. §161.001(b)(1)(E). Joshua argues that because he was incarcerated for the relevant periods of time while not knowing that Ashley was pregnant or that the children were his, there was legally and factually insufficient evidence to show that his conduct endangered the children or that he was involved in the children's placement with Ashley, who unquestionably endangered the children by her ongoing, substantial drug use.

**PROCEDURAL HISTORY AND FACTS RELEVANT TO JOSHUA**

A.T. and N.T., who are twins, were legally removed from Ashley in early January

of 2020, when they were less than two weeks old and still in the hospital after being born prematurely. Both tested positive for amphetamines and methamphetamines. Ashley, who was married to Brandon, named Joe as the father of the twins when they were removed. DNA testing determined that neither Brandon nor Joe were the father of the twins. At some point after Joe's paternity test came back excluding him as the twins' father in June of 2020, Ashley named Joshua as the alleged father of the twins, and she informed Joshua that she had given birth to the twins and that they were likely his. Joshua was in jail pending several felony charges at that time.

The trial court ordered paternity testing of Joshua in September of 2020, but the testing was not completed until the results were returned in October of 2021, a week after the final trial was commenced. Joshua was added as a party and named as an alleged father for the first time in an amended petition filed by the Department on September 29, 2021, prior to the return of the paternity testing and the trial. The trial before the associate judge commenced on October 22, 2021, and was recessed to December 16, 2021. The associate judge granted the termination of Joshua's parental rights pursuant to Section 161.001(b)(1)(E) and found that termination was in the best interest of the children. The associate judge issued findings of fact and conclusions of law in support of the judgment *sua sponte*. Joshua filed a motion for a de novo hearing of the associate judge's ruling, which was heard by the district court on January 25, 2022, and recessed until March 4, 2022. The district judge upheld the associate judge's ruling and entered a judgment

terminating Joshua's parental rights pursuant to a finding under Section 161.001(b)(1)(E) and best interest.

There was not much evidence at either the trial before the associate judge or the de novo hearing before the district court as to the specifics of Joshua's criminal history, but the history that was given formed the basis of the judgments to terminate his parental rights. Joshua was arrested on July 3, 2019 which was almost six months prior to the birth of the twins. Joshua remained incarcerated until he bonded out on January 4, 2020. Joshua was arrested again on May 9, 2020 and remained incarcerated until he pled guilty on April 9, 2021 and was sentenced to four 20-year concurrent sentences for unlawful possession of a firearm by a felon, tampering with evidence, manufacture or distribution of methamphetamines in an amount of 200 to 400 grams, credit/debit card abuse, and a 2-year sentence for fraud. The offenses were enhanced by a prior forgery conviction out of Kentucky in 2012. Although the dates of the commission of the offenses is unknown, it is undisputed that the offenses were committed prior to the time Ashley told him that she had given birth to the twins and that there was a possibility that he was their father in the summer of 2020.

### FAMILY CODE SECTION 161.001(b)(1)(E)

Joshua argues that the evidence was legally and factually insufficient for the trial court to have found that he "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being

of the child[ren]" because he did not have any knowledge of Ashley's pregnancy or his paternity of the twins at the time he committed any of his criminal offenses. TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

As it relates to the termination of parental rights, "[e]ndanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). An endangerment finding often involves physical endangerment, but it is not necessary to show that the parent's conduct was directed at the children or that the children suffered actual injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Rather, the specific danger to the child[ren]'s well-being may be inferred from the parent's misconduct alone." *Id*. In our endangerment analysis pursuant to Section 161.001(b)(1)(E), we may consider conduct both before and after the Department removed the children from his or her parent. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). In general, a parent's conduct that subjects children to a life of uncertainty and instability endangers the physical and emotional well-being of those children. *Boyd,* 727 S.W.2d at 531.

The Texas Supreme Court has recently discussed the interplay between imprisonment and a finding pursuant to Section 161.001(b)(1)(E) as follows:

> In *Texas Department of Human Services v. Boyd*, we acknowledged that "Texas cases have considered the involuntary termination of the rights of an imprisoned parent, and have held that mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child," but we nevertheless held that incarceration does support an endangerment finding "if the evidence,

including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional wellbeing of the child." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533-34 (Tex. 1987). A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment. *See In re J.O.A.*, 283 S.W.3d 336, 345-46 (Tex. 2009). Imprisonment thus "is certainly a factor" the trial court may weigh when considering endangerment. *Boyd*, 727 S.W.2d at 533.

*In re J.F.-G.*, 627 S.W.3d 304, 312-13 (Tex. 2021).

The facts in this proceeding are very similar to another recent proceeding from this Court, *In re R.K.P-R.*, No. 10-21-00265-CV, 2022 Tex. App. LEXIS 366, 2022 WL 172381 (Tex. App.—Waco Jan. 19, 2022, pet. ref'd). In that proceeding, like in this proceeding, the father had committed each of his criminal offenses prior to learning that he was a father. We distinguished the holding of the Texas Supreme Court from *In re J.F.-G*, and held that:

> [W]hile the facts regarding the lengthy criminal history of the parent, lengthy incarceration, and escalation of offenses are somewhat similar to *J.F.-G.*, there is a significant distinction in that in *J.F.-G.*, the parent's criminal conduct took place both before and after the parent was aware of the birth of the child. However, in this proceeding there is no evidence that Father even knew that he was to be a parent at the time of his last criminal offense and imprisonment. There must be some connection between the timing of some part of Father's criminal offenses and Father's knowledge of paternity to support a finding that a child, whether it be the child whose relationship is terminated or some other child in Father's life, has been endangered by Father's criminal behavior. Because there is no evidence of any connection in time between any of Father's criminal offenses and the endangerment of R.K.P.-R. or any other child, we find that the evidence was legally and factually insufficient for the trial court to have found that he endangered R.K.P.-R. based solely on conduct that occurred prior to his knowledge that the mother was pregnant and that did not affect the mother or the child, such as using drugs with the mother might.

*In re R.K.P.-R*, 2022 Tex. App. LEXIS 366 at *8. We find that the evidence in this proceeding leads us to a similar conclusion. Joshua's paternity was not even established until after the final hearing had commenced. He had committed no criminal offenses or even had any behavioral misconduct during his incarceration before or after he found out about his potential paternity. Joshua was not ordered to participate in any services relating to the twins because paternity had not been established prior to the trial. There was no evidence that he had other children.

Section 161.001(b)(1)(E) also allows for termination if the parent "knowingly placed the child[ren]" with a person who endangered the child[ren]. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). However, there was no evidence that Joshua knowingly placed the twins with anyone who endangered them because he did not know of their existence at a time when he could have been involved in their placement. Although Joshua testified that he believed that the twins should ultimately be returned to their mother, this is not evidence that he "knowingly placed" the children with her.

Because we find that the evidence was legally insufficient pursuant to Section 161.001(b)(1)(E), and that was the only predicate act upon which the termination was granted, we reverse the judgment of the trial court terminating Joshua's parental rights and remand this proceeding to the trial court. We sustain issue one. Further, because we have found the evidence was legally insufficient as to the sole predicate act upon which the termination was granted, it is not necessary to address Joshua's second issue

regarding best interest.

**CONCLUSION**

Having found no meritorious issues presented in Ashley's appeal, we affirm the judgment of the trial court terminating Ashley's parental rights. Because we have found that the evidence was legally insufficient for the trial court to have granted the termination of Joshua's parental rights, we reverse the judgment of termination as to Joshua and remand this proceeding to the trial court for further proceedings. In compliance with Texas Rule of Appellate Procedure 28.4(e), because we are remanding the termination case as to Joshua to the trial court for further proceedings, the trial court must commence the new trial, if any, as to Joshua no later than 180 days after the appellate court mandate is issued.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed in part; reversed and remanded in part
Opinion delivered and filed July 27, 2022
[CV06]

