

# IN THE
# TENTH COURT OF APPEALS

## No. 10-21-00324-CV

# IN THE INTEREST OF
# A.D., A.D., M.D., B.D., C.M. AND A.M., CHILDREN

**From the 278th District Court
Madison County, Texas
Trial Court No. 20-16841**

# IN THE
# TENTH COURT OF APPEALS

## No. 10-21-00330-CV

# IN THE INTEREST OF W.M., A CHILD

**From the 278th District Court
Madison County, Texas
Trial Court No. 20-16839**

# MEMORANDUM OPINION

In Cause No. 10-21-00324-CV, Brandy D. appeals from the trial court's order

terminating her parental rights to her children, A.D.1, A.D.2, M.D., B.D., C.M., and A.M.

William M. appeals from the trial court's order terminating his parental rights to C.M. and A.M. After hearing all the evidence, the trial court found by clear and convincing evidence that both Brandy and William (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the children, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children, and (3) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the children, and (TEX. FAM. CODE ANN. § 161.001 (b) (1) (D) (E) (O)(West). The trial court further found by clear and convincing evidence that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.001 (b) (2) (West).

In Cause No. 10-21-00330-CV, William appeals from the trial court's order terminating his parental rights to W.M.[1] The trial court found by clear and convincing evidence that William (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the child, (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the child, and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child. (TEX. FAM. CODE ANN. § 161.001 (b) (1) (D) (E) (O)(West). The trial court further found by clear and convincing evidence

---

[1] The mother of W.M. is not a party to this appeal.

that termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (b) (2) (West). We affirm the trial court's orders of termination in both cause numbers.

FATHER'S APPEAL

In both Cause No. 10-21-00324-CV and Cause No. 10-21-330-CV, William's counsel filed a brief pursuant to *Anders v. California* asserting that he has conducted a review of the record and found no arguable issues to raise on appeal. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The procedures set forth in *Anders v. California* are applicable to appeals of orders terminating parental rights. *In re E.L.Y.*, 69 S.W.3d 838, 841 (Tex. App.—Waco 2002, order) (per curiam) (applying *Anders* to parental termination appeals). *See also Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-647 (Tex. App.—Austin 2005, pet. denied).

The brief filed meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. Additionally, William's attorney advised him that he had filed the brief pursuant to *Anders*, that William had the right to review the record and file a pro se response on his own behalf, and provided William with a copy of the record. William did not file a response.

In the *Anders* brief, counsel analyzes the legal and factual sufficiency of the evidence to support termination. Counsel acknowledges that only one statutory ground is necessary to support an order of termination in addition to a finding that termination is in the children's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Counsel

further evaluates the legal and factual sufficiency of the evidence to support a finding that termination was in the best interest of the child. Counsel's brief evidences a professional evaluation of the record for error, and we conclude that counsel performed the duties required of an appellate counsel.

Due process requires application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* TEX. FAM. CODE ANN. § 101.007 (West). *See also In re C.H.*, 89 S.W.3d 17, 25-26 (Tex. 2002).

The Family Code permits a court to order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of the statute and also proves that termination of the parent-child relationship is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). We agree with counsel's evaluation that there is clear and convincing evidence to support termination under Section 161.001(b)(1).

Notwithstanding the sufficiency of the evidence to support termination under section 161.001 (b) (1), we must also find clear and convincing evidence that termination of the parent-child relationship was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001 (b) (2). Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. There is a long-standing non-exhaustive list of

factors for a court to consider in deciding the best interest of a child in a termination case. *See Holley*, 544 S.W.2d at 371-72.

We agree with counsel's evaluation that there is clear and convincing evidence under the appropriate legal and factual sufficiency standards for the trial court to have determined that termination of the William's parent-child relationship was in the best interest of C.M., A.M., and W.M.

Upon receiving a "frivolous appeal" brief, this Court must conduct a full examination of all proceedings to determine whether the case is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 349-50, 102 L. Ed. 2d 300 (1988); *see also Interest of E.K.*, 594 S.W.3d 435, 438 (Tex. App. — Waco 2019) (Gray, C.J., concurring), *pet. den'd*, 608 S.W.3d 815 (Tex. 2020). After our review of the entire record and counsel's brief, we agree with counsel that there are no plausible grounds for appeal. *See Bledsoe v. State*, 178 S.W.3d 824, 827-28 (Tex. Crim. App. 2005).

If William., after consulting with counsel, desires to file a petition for review, counsel is still under a duty to timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief."[2] *See In re P.M.*, 520 S.W.3d 24, 27-28 (Tex. 2016).

---

[2] We do not address whether counsel's duty requires the filing of a petition for review or a motion for rehearing in the Texas Supreme Court in the absence of the client's professed desire to do so in *Anders* proceedings

In Cause No. 10-21-00324-CV, Brandy brings four issues on appeal in which she argues that the evidence was insufficient to support the jury's predicate parental termination findings under Section 161.001 (b) (1) (D), (E), or (O) of the Texas Family Code and that the evidence was insufficient to support the finding that termination was in the best interest of the child.

SUFFICIENCY OF THE EVIDENCE

Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (emphasis in *J.P.B.*).

In a factual sufficiency review,

[A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (internal footnotes omitted) (alterations added).

**ENDANGERING THE CHILDREN**

Sections 161.001 (b) (1) (D) and (E) both require a finding of endangerment. To endanger means to expose to loss or injury, to jeopardize. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533.

When termination of parental rights is based on section D, the endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his or her well-being. *In the Interest of E.M.*, 494 S.W.3d 209, 221 (Tex. App. —Waco 2015, pet. den'd). Section D permits termination if the petitioner proves parental conduct caused a child to be placed or remain in an endangering environment. *Id*. It is not necessary that the parent's conduct be directed

toward the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards. *Id*. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Id*. In considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. *Id*. Section D permits termination based upon only a single act or omission. *In the Interest of E.M.*, 494 S.W.3d at 222.

Under subsection 161.001 (b) (1) (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *Id*. Under subsection (E) it can be either the parent's conduct or the conduct of a person with whom the parent knowingly leaves the child that endangers the physical or emotional well-being of the child. In either instance it is thus the direct result of the parent's conduct that results in the termination of the parental rights. It is not necessary, however, that the conduct be directed at the child or that the child actually suffer injury. *In the Interest of E.M.*, 494 S.W.3d at 222.

Because the evidence pertaining to subsections 161.001 (b) (1) (D) and (E) is interrelated, we may conduct a consolidated review. *In Interest of M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App. —Fort Worth 2009, no pet.).

Brandy is the mother of A.D.1, A.D.2, M.D., B.D., C.M., and A.M. The Texas Department of Family and Protective Services (the Department) had multiple instances of involvement with Brandy and William and their children over concerns of neglect and abuse. In April 2020, the Department became involved with the family due to concerns about the cleanliness of the house, domestic violence, and William's mental health. The Department began providing services to the family at that time.

In October 2020, Sergeant Curtis Klingle, with the Madison County Sheriff's Office, responded to a domestic disturbance call at the family's residence. There were allegations of an assault and that William was experiencing suicidal thoughts. No one was arrested at that time. Sergeant Klingle testified that he responded to another domestic disturbance call with the family in November 2020. William beat A.D.1 with a belt all over her body. When Brandy tried to intervene, William slapped her and shoved her. Eventually a neighbor intervened, and William left the residence. Sergeant Klingle located William at a convenience store, and he was placed under arrest. Brandy told Sergeant Klingle that William had committed previous acts of domestic violence against both her and A.D.1. There was testimony that the other children witnessed the domestic violence in the home.

The children were removed from the home in November 2020 after the domestic violence allegations. At the time of their removal, the children were infested with lice and bed bugs. Some of the children had scabies and impetigo. At the time of the removal, W.M. had a broken arm that was untreated and B.D. had chronic untreated ear infections.

For no apparent reason, the children were behind on their immunizations, and the youngest two children had not received any immunizations. Several of the children had known mental health conditions for which they were not receiving treatment. C.M. and A.M. had trouble standing because they had been confined in a space without appropriate room to move around.

There was evidence that the condition of the home was unsanitary. There was testimony of cat litter throughout the house, animal feces on the floors, and that the house smelled of urine. There was further testimony of rotten food in the house and that the refrigerator contained mold and had food sitting in the mold. There was also testimony that the house was extremely cluttered and not safe for young children. Ladies from a local church cleaned the home for the family, but it soon returned to being unsanitary. Both William and Brandy testified that the condition of the home was in an unacceptable condition for the children.

A neighbor testified that the children were dirty and wore dirty clothes. The neighbor would bathe the children and wash their clothes. She testified that Brandy and William did not take care of the children and that they left A.D.1 to care for the children. The neighbor stated that the children witnessed domestic violence in the home.

Domestic violence may support a finding of endangerment under either Sections 161.001 (b) (1) (D) of Section 161.001 (E) depending on the given circumstances. *See In the Interest of A.L.H.*, 624 S.W.3d 47, 57 (Tex. App. —El Paso 2021, no pet.). The record shows

that the children witnessed multiple instances of domestic violence in the home and that A.D.1 was a victim of domestic violence. Brandy continues to reside with William. A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App. — Fort Worth 2004, pet. denied). The record shows that the family had a history of instability in housing and employment.

Allowing children to live in unsanitary conditions, and neglecting their physical condition, can be endangerment. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *In the Interest of A.P.*, 42 S.W.3d 248, (Tex. App. —Waco 2001, no pet.). The children lived in deplorable conditions in the home and were infested with lice and bed bugs. We find that the evidence is legally and factually sufficient to support the trial court's findings that Brandy knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the children and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children. TEX. FAM. CODE ANN. § 161.001 (b) (1) (D) (E) (West). We overrule the first and second issues on appeal. Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Because we find that the evidence is sufficient under Section 161.001 (b) (1) (D) & (E), we have addressed the

concerns of protecting Brandy's due process and due course of law rights.  *See In the Interest of N.G.*, 577 S.W.3d 230 (Tex. 2019).  We need not address the third issue on appeal.

**BEST INTEREST**

In the fourth issue, Brandy argues that the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children.  In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child;  (2) the emotional and physical needs of the child now and in the future;  (3) the emotional and physical danger to the child now and in the future;  (4) the parental abilities of the individuals seeking custody;  (5) the programs available to assist these individuals;  (6) the plans for the child by these individuals;  (7) the stability of the home;  (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one;  and (9) any excuse for the acts or omissions of the parent.  *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App. —Waco 2013, no pet.).  The *Holley* factors focus on the best interest of the child, not the best interest of the parent.  *In re S.L.*, 421 S.W.3d at 38.  The goal of establishing a stable permanent home for a child is a compelling state interest. *Id*.  The need for permanence is a paramount consideration for a child's present and future physical and emotional needs.  *Id*.

The children's ages range from fourteen years-old to one year-old.  Most of the children are too young to express their desires; however, there was testimony that the

children are happy in their current placements. There was also testimony that A.D.1 did not want to live with William and that Brandy is aware of A.D.1's desires. Brandy and William currently reside together in Las Vegas, Nevada, and Brandy plans to continue to live with him.

The children have many emotional and physical needs. Several of the children have been diagnosed with medical conditions that require weekly therapy sessions. Psychologist Dr. Adam Saenz testified that he treats A.D.1, B.D., W.M., and M.D. A.D.1 was diagnosed with Tourette's disorder, and Dr. Adam Saenz, testified that stress makes the disorder worse. W.M. was diagnosed with hyper impulsivity, B.D. was diagnosed with adjustment disorder, and M.D. was diagnosed with ADHD and reactive attachment disorder. Dr. Saenz stated that if they were placed back in the home where the trauma occurred, they would go back to their least functional moment. While in Brandy's care the children did not receive proper medical treatment, and Keandra Jones with the Department testified that Brandy did not have an understanding on how to meet the needs of the children. Jones further stated that she had no confidence Brandy would be able to get the children the medical care they require.

While in Brandy's care the children lived in unsanitary conditions, and they were infected with lice and bedbugs. Brandy relied on A.D.1 to care for the children and clean the house. Jones testified that Brandy participated in services in Texas, but she did not show that she made progress in those services. Jones said there was nothing to show that

Brandy had applied what she learned in services to her life. As of June 2021, there was no improvement in their housing conditions. Brandy said that she is participating in services in Las Vegas, but Jones was unable to verify that Brandy actually receives those services. Jones testified that she has not seen a change in Brandy's behavior.

The children witnessed domestic violence in the home, and A.D.1 was a victim of domestic violence. Brandy still lives with William and plans to continue that living arrangement. At the time of the hearing, Brandy had only recently obtained her own housing in Las Vegas. The Department could not verify that she would be able to provide stable housing for the children.

Brandy currently works as an Uber driver. She plans to have a family member watch the children while she works. She also testified that while the older children are in school, the younger children can attend a daycare so that she can work. Brandy did not indicate that she had made arrangements for the children to attend a daycare facility. Brandy's current vehicle will not accommodate all of the children, and Brandy did not testify how she plans to provide transportation for her children. The children are currently receiving therapy. Their current placements are able to accommodate their therapy and medical treatment needs. Brandy testified that she would be able to take the children to therapy appointments, but she did not provide any details indicating that she had arranged for their treatment.

The children are not all placed together; however, there was testimony that they see each other frequently. The children are all doing well in their current placements and are bonded to their current caregivers. All of the children's current placements are willing to adopt the children or to provide care until a permanent placement can be found.

We find that the evidence is legally and factually sufficient to support the trial court's finding that termination of Brandy's parental rights is in the best interest of the children. We overrule the fourth issue.

### CONCLUSION

In Cause No. 10-21-00324-CV, we affirm the trial court's order terminating Brandy's parental rights to her children A.D.1, A.D.2, M.D., B.D., C.M., and A.M. and William's parental rights to his children C.M. and A.M. In Cause No. 10-21-00330-CV, we affirm the trial court's order terminating William's parental right to W.M.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed April 27, 2022
[CV06]

