

IN THE
TENTH COURT OF APPEALS

———————————

No. 10-23-00294-CV

———————————

IN THE INTEREST OF A.V.G.-P. AND A.O.G.-P., CHILDREN

———————————

From the County Court at Law No. 1
Johnson County, Texas
Trial Court No. CC-D20220178

———————————

MEMORANDUM  OPINION

———————————

The father of A.V.G.-P. and A.O.G.-P. appeals from a judgment that terminated his parental rights.[1]  *See* TEX. FAM. CODE § 161.001(b)(1), (2).  The father complains that the evidence was legally and factually insufficient for the trial court to have found that he committed the predicate acts in Section 161.001(b)(1)(D), (E), (N), and (O) and that termination was in the best interest of the children.  Because we find no reversible error, we affirm the judgment of the trial court.

STANDARD OF REVIEW—LEGAL AND FACTUAL SUFFICIENCY

The standards of review for legal and factual sufficiency in cases involving the

---

[1] The mother of the children did not appeal the trial court's judgment.  Neither the mother nor the father attended the final trial.

termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency); *see also In re J.O.A.*, 283 S.W.3d 336, 344-45 Tex. 2009). If the evidence is sufficient as to one ground, it is not necessary to address other predicate grounds because sufficient evidence as to only one ground in addition to the best interest finding is necessary to affirm a termination judgment. *In re N.G.*, 577 S.W.3d 230, 232-33 (Tex. 2019).

**BACKGROUND FACTS**

The department received a referral that there was domestic violence and drug use in the home of the mother and father. A.V.G.-P. was one year old and the mother was pregnant with A.O.G.-P. The department began an investigation but had significant difficulty contacting the parents. The mother gave birth at home to A.O.G.-P., but they were then transferred to a local hospital, where the department made contact with the mother and father. A translator provided by the hospital was used to communicate with the parents. The mother admitted to the use of marijuana and methamphetamine, with the methamphetamine use a week before A.O.G.-P.'s birth. The father admitted to the use of cocaine. There was no specific testimony regarding domestic violence in the home.

A.O.G.-P.'s umbilical cord blood was tested for drugs. The umbilical cord blood was positive for methamphetamines, cocaine, benzoylecgonine, amphetamine, and THC. The children were removed from the parents at this time due to the positive drug test,

the parents' admitted drug use, and the allegations of ongoing domestic violence. The caseworker testified that A.O.G.-P. had some withdrawal issues and side effects from the mother's drug use when he was first placed into foster care after the removal.

Both parents were requested to complete services. The service plans had to be redone in Spanish but both parents signed their plan.[2] The father did not participate in any of the services required by his service plan outside of completing one requested drug test. Visitation with the children was suspended due to the parents not attending the visits and not completing requested drug tests; however, the trial court ordered that the visits could commence again when two clean drug test results were provided by each parent.

The caseworker testified that the father communicated a desire to start visits again but did not complete the required drug tests or otherwise engage in services. He did eventually take one hair and urine test which was negative near the end of the proceeding, but failed to take any of the other drug tests that were requested.

SECTION 161.001(B)(1)(E)

In his third and fourth issues, the father argues that the evidence was legally and factually insufficient for the trial court to have terminated his parental rights on Subsection (E) endangerment grounds, which allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent "engaged in conduct or

---

[2] The service plans were not admitted into evidence at the final trial.

knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "Endanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). An endangerment finding often involves physical endangerment, but it is not necessary to show that the parent's conduct was directed at the children or that the children suffered actual injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Rather, the specific danger to the child[ren]'s well-being may be inferred from the parent's misconduct alone." *Id*. In our endangerment analysis pursuant to Section 161.001(b)(1)(E), we may consider conduct both before and after the Department removed the children from their parent. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

A parent's use of illegal drugs, and its effect on his or her ability to parent, may qualify as endangering conduct. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). As a general proposition, illegal drug use may support termination under subsection (E) because it exposes the children to the possibility that the parent may be impaired or imprisoned. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617-18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

A parent's missed visits with a child and his failure to complete a service plan can support an endangerment finding because such conduct "generally subjects a child to a

life of instability and uncertainty." *In re A.R.M.*, 593 S.W.3d 358, 371 (Tex. App.—Dallas 2018, pet. denied). Failing to regularly participate in visitation can reasonably be found to be emotionally endangering to the child's well-being. *In re A.F.*, No, 07-19-00435-CV, 2020 WL 2786940, at *7, 2020 Tex. App. LEXIS 4152 (Tex. App.—Amarillo May 29, 2020, pet. denied) (mem. op.). In general, a parent's conduct that subjects children to a life of uncertainty and instability endangers the physical and emotional well-being of those children. *Boyd*, 727 S.W.2d at 531.

Here, the father argues that there was insufficient evidence that he knew the mother was using drugs during her pregnancy or that the father and mother were even together prior to A.O.G.-P.'s birth. The investigator testified that the parents were together when the initial referral came in and that she attempted to reach both of them during the investigation. The investigator was able to interview both parents at the hospital after the birth of A.O.G.-P., where they each admitted to using drugs that were found in the umbilical cord screen taken from A.O.G.-P. It was not until several months after the children were removed that the father informed the department that the parents were no longer together. Thus, the trial court could have found that the parents were together prior to the birth of A.O.G.-P. and that the father was using drugs around the children and was aware of the mother's drug use during the pregnancy and take that into consideration as part of its endangerment analysis. *See In re J.A.V.*, 632 S.W.3d 121, 134 (Tex. App.—El Paso 2021, no pet.).

Further, the father did not regularly visit with the children from the time of the removal until visitation was suspended by the trial court approximately three months after this proceeding commenced. At that point, in order to reinstate visitation, the father had to test negative for drugs two times. The department requested that the father take drug tests, but he did not. After the father failed to take the drug tests, the trial court suspended visitation entirely approximately six months into this proceeding. The father took one requested drug test later in the proceeding which consisted of screening both urine and hair, which was negative. The father did not otherwise participate in any services, although he contacted the department several times about wishing to reinstate visitation. A parent's missed visits with a child and his failure to complete a service plan can support an endangerment finding because such conduct "generally subjects a child to a life of instability and uncertainty." *In re A.R.M.*, 593 S.W.3d 358, 371 (Tex. App.—Dallas 2018, pet. denied).

Viewing the evidence under the appropriate standards for the legal and factual sufficiency of the evidence, the evidence was legally and factually sufficient to sustain the trial court's endangerment finding pursuant to Subsection (E). Implicit in that determination is our recognition of the deference to be accorded the factfinder's weighing of the evidence and credibility determinations. *See In re C.R.*, No. 07-19-00009-CV, 2019 Tex. App. LEXIS 3082, at *7 (Tex. App.—Amarillo Apr. 16, 2019, pet. denied) (requiring such deference); *In the Interest of A.V.*, No. 07-22-00340-CV, 2023 Tex. App. LEXIS 2652 at

*4, 2023 WL 3075943 (Tex. App.—Amarillo Apr. 25, 2023, no pet.). We overrule issues three and four. Because we have found the evidence was sufficient to support one ground upon which the termination was based, we do not reach issues one, two, five, six, seven, or eight.

## BEST INTEREST

In his ninth and tenth issues, the father complains that the evidence was legally and factually insufficient for the trial court to have found that termination was in the best interest of the children. In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply lists factors that have been or could be pertinent in the best interest determination. *Id*. There is no requirement that all of these factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence relating to the predicate grounds under Section 161.001(b)(1) also may be relevant to determining the best interest of the children. *See C.H.*, 89 S.W.3d at 27-28.

The admitted illegal drug use of the mother and father was a substantial factor in the removal of the children. It was therefore a reasonable deduction for the trial court to determine that the father's failure to address the illegal drug use or to even participate in

drug testing when requested and when required to regain visitation with the children established that the father lacked the motivation necessary to seek out programs available to assist him in promoting the wellbeing of the children. *See In re A.B.*, No. 07-19-00180-CV, 2019 Tex. App. LEXIS 9110, 2019 WL 5199299, at *6 (Tex. App.—Amarillo Oct. 15, 2019, no pet.) (mem. op.) (parent's failure to complete services directly related to reason for child's removal, including substance-abuse assessment, supported finding that termination was in child's best interest because it gave rise to inference that parent did not have ability to motivate himself to seek out resources available to promote child's wellbeing). Taking drug tests when requested would have allowed the father to show that he was not using illegal drugs when his parental relationship with the children was at stake, but he did not do so.

Further, a parent's failure to regularly visit his children after removal may support a finding that termination of the parent's rights is in the children's best interest. *See In re T.R.H.*, No. 01-16-00450-CV, 2016 Tex. App. LEXIS 12475, 2016 WL 6873061, at *8 (Tex. App.—Houston [1st Dist.] Nov. 22, 2016, pet. denied) (mem. op.). This is because the failure to regularly visit one's children, especially young children, signals that the parent-child relationship is not an appropriate one and that the parent is unwilling or unable to meet the children's emotional and physical needs. *See In re A.J.D.-J.*, 667 S.W.3d 813, 824 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("Parental absence or lack of involvement is especially telling with respect to the best interest of very young children, like babies

and toddlers, due to their inherent vulnerability and particular need for parental attention and nurturing."). A.V.G.-P. was approximately one year old and A.O.G.-P. was a newborn at the time of the removal. The father failed to even attempt to maintain or establish a bond with the children through visitation at the start of the proceedings until visits were suspended pending negative drug tests. Thereafter, the father failed to attempt to regain visitation by taking the drug tests when requested.

Finally, the father did not attend the jury trial. When a parent fails to attend termination proceedings without a valid explanation, "the factfinder may reasonably infer that the parent is indifferent to the outcome." *In re A.J.D.-J.*, 667 S.W.3d at 826. A parent's failure to attend the final hearing may support a finding that termination is in the children's best interest. *See In re A.J.D.-J.*, No. 01-22-00724-CV, 667 S.W.3d 813, 2023 Tex. App. LEXIS 1964, 2023 WL 2655736, at *8 (Tex. App.—Houston [1st Dist.] Mar. 28, 2023, no pet.). A parent who drops out of participation in legal proceedings where their parental rights are at stake can be presumed to lack the interest, ability, and desire to be involved in their children's lives, which supports the trial court's best interest finding.

Viewing the evidence under the appropriate standards for legal and factual sufficiency of the evidence, we find that the evidence was legally and factually sufficient for the trial court to have found that termination was in the best interest of the children. We overrule issues nine and ten.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed March 28, 2024
[CV06]

